

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-10-1994

# Electric Ins. Co. v. Rubin

Precedential or Non-Precedential:

Docket 93-1354

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Electric Ins. Co. v. Rubin" (1994). *1994 Decisions.* Paper 106.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/106

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-1354


ELECTRIC INSURANCE COMPANY

v.

NATHAN RUBIN; PATRICIA RUBIN


PATRICIA RUBIN

v.

NATHAN RUBIN; ELECTRIC INSURANCE COMPANY

Patricia Rubin and Nathan Rubin,

Appellants


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 93-01921 and 93-04946)


Submitted under Third Circuit LAR 34.1(a)
August 5, 1994

BEFORE:  STAPLETON and GREENBERG, Circuit Judges,
and ATKINS, District Judge*

(Filed: August 11, l994)


                    Warren Rubin
                    Jonathan Kowit
                    Law Offices of
                    Bernard M. Gross
                    1500 Walnut Street
                    Sixth Floor
                    Philadelphia, PA  19102

                    Attorneys for appellant
                    Patricia Rubin

* Honorable C. Clyde Atkins, Senior United States District Judge
for the Southern District of Florida, sitting by designation.

Jay Barry Harris
Alexander B. Zolfaghari
Fineman & Bach
1608 Walnut Street
Philadelphia, PA  19103

       Attorneys for appellant
       Nathan Rubin

Francis F. Quinn
Eugene Hamill
Lavin, Coleman, Finarelli
  & Gray
Penn Mutual Tower
12th Floor
510 Walnut Street
Philadelphia, PA  19106

       Attorneys for appellee

Laurence M. Kelly
Kelly & Kelly
35 Public Avenue
Montrose, PA  18801

       Attorney for Amicus
       Curiae Pennsylvania Trial
       Lawyers Association

_____

OPINION OF THE COURT

GREENBERG, Circuit Judge.

## I. INTRODUCTION

Nathan and Patricia Rubin, who are husband and wife, appeal from an order in these consolidated diversity of citizenship cases granting summary judgment to Electric Insurance Company and declaring that Electric is not obligated to provide coverage under a personal excess liability insurance policy it issued to Nathan Rubin for claims made by Patricia Rubin arising from an automobile accident on November 7, 1992. The germane facts are not in dispute, and we exercise plenary review on this appeal. Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir.), cert. denied, 114 S.Ct. 554 (1993). The parties agree that the case is governed by Pennsylvania law, which we accordingly apply.

The facts are not complicated. On December 29, 1988, Nathan Rubin signed Electric's application for a personal excess liability insurance policy, which is sometimes called an umbrella policy. The application was an uncomplicated two-page form which identified Nathan Rubin's two automobiles and included an option for a $2,000,000 liability limit which he selected. The application included a premium calculated on coverage for a residence and two automobiles. The application, however, did not include the terms and conditions of the policy that Electric would issue, except insofar as it stated that applicants must have underlying liability policies with specified limits including, as germane here, $100,000/$300,000 bodily injury

coverage for automobiles.  The insurance was to be effective when Electric received the application.

Electric subsequently issued the excess policy to Nathan Rubin as the named insured with Patricia Rubin being an additional insured.  The policy contained a provision that "we do not provide Liability Coverage for any insured . . . for personal injury to you or your relative."  This provision, however, had not been included in the application.  Inasmuch as the policy defined "relative" to include a person related to the insured by marriage, by its terms the policy did not cover Nathan Rubin for claims made by Patricia Rubin.  The policy was renewed annually through the issuance of declaration statements.  The premium for the policy period from January 18, 1992, until January 18, 1993, included a charge of $60.00 for two automobiles, and the total premium for that year was $112.50.

On November 7, 1992, Nathan Rubin, while driving an automobile with Patricia Rubin as a passenger, crashed into a parked tractor trailer, causing her to suffer injuries so catastrophic that by November 11, 1993, her medical bills were $746,489.78.  At the time of the accident, the Rubin automobile was insured for basic coverage by Commercial Union Insurance Company which has tendered its $100,000 liability policy limits and which thus has no further liability obligations.  Obviously, Patricia Rubin's claim against Nathan Rubin exceeds the $100,000 Commercial Union limit, and Nathan Rubin accordingly has called on Electric to defend him against his wife's claim.  Electric,

however, citing the exclusion we quote above, has denied coverage.

As a result of the claim for coverage and the disclaimer, the parties started two actions to determine the scope of coverage. Electric brought a declaratory judgment action in the district court against the Rubins seeking an order that it does not provide liability insurance coverage to Nathan Rubin for Patricia Rubin's claim. Patricia Rubin brought an action against Nathan Rubin and Electric in the Court of Common Pleas of Philadelphia County, Pennsylvania, seeking a declaration that the exclusion is invalid as being against public policy and being unenforceable under the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL). Furthermore, Patricia Rubin sought an order that Electric must cover Nathan Rubin, as it acted in bad faith and violated the Pennsylvania Unfair Insurance Practices Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law in its dealings with him.[1] Electric removed Patricia Rubin's action to the district court where the two declaratory judgment actions were consolidated.

The district court decided the consolidated cases by granting Electric's motions for summary judgment in a memorandum opinion dated February 17, 1994. The district court first said that it was undisputed that the excess policy excluded coverage

---

[1]. We note that the Rubins do not assert that Patricia Rubin ever has commenced a tort action against Nathan Rubin to recover for her injuries, though Electric in its brief refers to a common pleas court action that apparently is such a case.

for Patricia Rubin's claim.  The court then noted that although the Rubins contended that the exclusion was against public policy, the case which gave the most support for this contention, Hack v. Hack, 433 A.2d 859 (Pa. 1981), merely struck down interspousal tort immunity in Pennsylvania and did not deal with insurance coverage.  The district court then indicated that the Supreme Court of Pennsylvania never has dealt with the validity of family exclusions, but the Pennsylvania Superior Court has upheld them.  See Neil v. Allstate Ins. Co., 549 A.2d 1304, 1306 (Pa. Super. Ct. 1988), allocatur denied, 549 A.2d 1304 (Pa. 1989); Paiano v. Home Ins. Co., 385 A.2d 460 (Pa. Super. Ct. 1978).  The district court also observed that federal courts applying Pennsylvania law "repeatedly" and "emphatically" have upheld family exclusions.  See, e.g., Groff v. State Farm Fire and Casualty Co., 646 F. Supp. 973 (E.D. Pa. 1986).  The court next held that while the application Nathan Rubin completed for the insurance did not contain the exclusion, that omission did not matter because the policy which included the exclusion was issued and renewed three times before the accident.

The district court then acknowledged that the MVFRL invalidates family exclusions, but it held, citing Stoumen v. Public Serv. Mut. Ins. Co., 834 F. Supp. 140, 143 (E.D. Pa. 1993), that that interdiction was immaterial because excess liability insurance is not governed by the MVFRL.  The district court also observed that application of the MVFRL to excess policies would change the insurance business in Pennsylvania and result in significantly higher premiums for excess coverage.  The

court also pointed out that Nathan Rubin paid only $60.00 for the annual coverage for two automobiles, a premium which suggested that he was not buying basic coverage. Finally, the court found no reason to hold that Electric had acted in bad faith and no basis on which to impose liability under the Unfair Insurance Practices Act or the Unfair Trade Practices and Consumer Protection Law.

In view of the district court's conclusions, it entered an order in the consolidated cases on February 18, 1994, in favor of Electric and against the Rubins. The Rubins have appealed from that order. We will affirm.

## II.  DISCUSSION

The Rubins first argue that Patricia Rubin cannot be excluded from coverage predicated on her marital status because she was not a party to the insurance agreement. They support this contention by pointing out that in Hack, 433 A.2d 859, the Supreme Court of Pennsylvania "abrogated the defense of inter-spousal immunity after determining that the various public policy considerations that supported the defense were outmoded and illogical." Brief at 15. They correctly observe that the Pennsylvania Insurance Department "specifically relied upon the abrogation of interspousal immunity in Hack to preclude insurers from excluding intrafamily lawsuits in automobile insurance policies." Id. at 17. See Memorandum of the Pennsylvania Insurance Department dated February 13, 1991. App. at 428. Citing, inter alia, Groff v. Continental Ins. Co., 741 F. Supp.

541 (E.D. Pa. 1990), and the Pennsylvania Unfair Insurance Practices Act, Pa. Stat. Ann. tit. 40, § 1171.5(a)(7)(iii) (1992), the Rubins further contend that Electric could not discriminate against Patricia Rubin because of her marital status, particularly inasmuch as she was not a party to the excess policy.  The Rubins next make the related argument that there is no valid policy consideration justifying the enforcement of the exclusion.

We see no support for these contentions.  It is true that in Hack the court concluded "that a tortfeasor's immunity from liability because of his marital relationship with the injured party cannot be sustained on the basis of law, logic or public policy."  433 A.2d 860-61.  Therefore, the court "abrogate[d] the judicially-created doctrine of interspousal immunity."  Id. at 861.  It is further true that in abrogating the immunity, the court pointed out that "family harmony" could be promoted by allowing tort actions between spouses in cases in which the defendant-spouse "is idemnified by insurance."  Id. at 866.  Furthermore, we realize that in many situations a defendant-spouse will be protected by liability insurance from a plaintiff-spouse's tort claims.  Indeed, Nathan Rubin has that protection up to the $100,000 coverage supplied by Commercial Union.  Nevertheless, Hack simply did not deal with insurance coverage issues.  Thus, we cannot conclude that the Hack court announced a public policy that an insurance policy, particularly an excess policy, could not have an interspousal exclusion.

The Unfair Insurance Practices Act is not germane to the issue before us. The section on which the Rubins principally rely simply precludes "unfair discrimination between individuals of the same class and essentially the same hazard with regard to underwriting standards and practices or eligibility requirements by reason of . . . sex . . . or marital status." Pa. Stat. Ann. tit. 40, § 1171.5(a)(7). In this case, there has been no discrimination of that character, as the exclusion is not concerned with "underwriting standards and practices or eligibility requirements." Rather, it deals with the scope of coverage which Nathan Rubin purchased.

The fact that Patricia Rubin is not a party to the policy, though she is an insured under it, is immaterial. There is no reason why an injured person must be a party to an insurance policy for the insured to be denied coverage under the policy when the injured person makes a claim against him. This is not a situation in which a Pennsylvania statute expressly requires that a spouse have coverage for a claim against him by his spouse unless the injured spouse waives coverage.

In reaching these conclusions, we take particular note of the Pennsylvania Supreme Court's recent opinion in Paylor v. Hartford Ins. Co., 640 A.2d 1234 (Pa. 1994). In Paylor, the court upheld the application of the "family car exclusion" which barred recovery for underinsured motorists coverage to the estate of a decedent from the Hartford Insurance Company. The decedent was killed while a passenger in a motor home driven by her husband. The motor home was insured by Foremost Insurance

Company which paid her estate its liability limits.  The decedent and her husband were both named insureds under both policies.  Clearly, the decedent would have had underinsured coverage under the Hartford policy if she simply had been a casual passenger in a vehicle owned by some other person to whom she had not been related at the time of the accident.

While obviously the issue in Paylor is distinguishable from that before us, that case is significant because it demonstrates that the Supreme Court of Pennsylvania is unwilling to eliminate all limitations on the scope of insurance coverage flowing from family relationships.  Paylor is also significant because it authoritatively demonstrates the methodology which we should apply here.  The court in Paylor indicated that when the insurance "policy language is clear and unambiguous, we will give effect to the language of the contract."  Id. at 1235.  It then indicated that if a policy provision violates public policy, it will not be enforced.

But the court made it perfectly clear that it will not easily find that a provision violates public policy.  Rather, "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest."  Id. (internal quotation marks omitted).  Accordingly, there are two bases on which a provision may violate public policy:  (1) "when a given policy is so obviously . . . against the public health, safety, morals or welfare that there is a virtual unanimity of opinion . . . that [it] is not in accord with public policy"; or (2) when a

provision cannot be enforced "when the courts have interpreted statutes broadly to help manifest their legislative intent." Id. (citation and internal quotation marks omitted).

Application of Paylor really decides this case. First, Paylor tells us to look to the terms of the policy which, as the Rubins concede, exclude coverage. Then Paylor tells us that we can invalidate the exclusion if a specific law or precedent requires that result. Here the general Pennsylvania insurance statutes include no such specific law, and there is no judicial precedent requiring the invalidation of the exclusion. Furthermore, Paylor makes it clear that an exclusion is not to be invalidated merely because it will apply only when there are family relationships involved in the underlying dispute. Finally, Paylor tells us that we should determine whether an exclusion must be invalidated to carry out legislative intent. But here the Rubins can point to no insurance or consumer protection statute which requires the exclusion's invalidation and, as we shall demonstrate, the MVFRL, 75 Pa. Cons. Stat. Ann. §§ 1701 et seq. (Supp. 1994), does not require its invalidation either.

The cases cited by the district court, Neil v. Allstate Ins. Co., 549 A.2d 1304, Paiano v. Home Ins. Co., 385 A.2d 460, and Groff v. State Farm Fire and Casualty Co., 646 F. Supp. 973, all support our result, as they all conclude that an exclusion from liability coverage of claims brought by relatives of the insured is valid. Neil is particularly significant because it states that the Hack court noted the existence of family

exclusion clauses "with approval." 549 A.2d at 1307. Indeed, Neil pointed out that family exclusion clauses helped to justify the abrogation of the interspousal immunity doctrine as the clauses "prevent the possibility of collusive suits." Id. at 1308. While the underlying claim here obviously is legitimate, that circumstance does not undermine the validity of the clause as written and applied in this case.

The Rubins argue that the excess policy is governed by the MVFRL and that, therefore, we cannot exclude coverage under it for an interspousal claim. We reject this argument. While it is true that the "general rule in Pennsylvania . . . [is that] family car exclusions . . . are invalid as against the policy of the" MVFRL, Sherwood v. Bankers Standard Ins. Co., 621 A.2d 1015, 1017 (Pa. Super. Ct. 1993), no Pennsylvania court of which we are aware has held that an excess policy is subject to the MVFRL.

Furthermore, we believe that the Pennsylvania Supreme Court would not hold that an excess policy is subject to the MVFRL. The MVFRL provides that "[e]very motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility." 75 Pa. Cons. Stat. Ann. § 1786(a). "Financial responsibility" is the "ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to

property of others in any one accident."  Id. § 1702.  See Worldwide Underwriters Ins. Co. v. Brady, 973 F.2d 192, 193-94 (3d Cir. 1992).  The MVFRL also provides for a comprehensive system of first party benefits, 75 Pa. Cons. Stat. Ann. § 1711, and for the availability of uninsured and underinsured coverage. Id. § 1731.

The excess policy in this case simply was not written to satisfy the MVFRL.  In fact, inasmuch as the policy required Nathan Rubin to carry underlying liability coverage, it is clear that the excess policy contemplated that Nathan Rubin have some other policy to satisfy the MVFRL.  See O'Hanlon v. Hartford Accident and Indem. Co., 639 F.2d 1019, 1027 (3d Cir. 1981).  In these circumstances, we find nothing in the MVFRL to support the Rubins' claim that the excess policy had to be written with liability coverage conforming to the MVFRL's requirements.  See Stoumen v. Public Serv. Mut. Ins. Co., 834 F. Supp. 140.  See also O'Hanlon v. Hartford Accident and Indem. Co., 639 F.2d at 1027 (Delaware law).

The Appellate Division of the Superior Court of New Jersey recently dealt with a claim analogous to the Rubins' in Weitz v. Allstate Ins. Co., 642 A.2d 1040 (N.J. Super. Ct. App. Div. 1994).  In Weitz, a wife brought an action against her husband for bodily injuries arising out of an automobile accident.  In addition to having a primary automobile liability insurance policy, her husband was the named insured in an excess policy issued by Allstate Insurance Company.  Consequently, the wife then filed a declaratory judgment action seeking a judgment

requiring Allstate to cover her husband for any damages she suffered in excess of his primary policy coverage. Allstate disputed liability because the policy did not apply to a personal injury to an "insured," and the wife was an "insured," as that term included relatives living in the named insured's household. The trial court ruled in favor of Allstate, as it held that the policy was clear and no statute required that there be coverage. Furthermore, it held that public policy did not require coverage.

On the wife's appeal, she contended that because under the New Jersey No Fault Act, N.J. Stat. Ann. § 39:6A-3 (West 1990), her husband's "primary automobile insurance policy could not have excluded coverage for claims brought by members of his household . . . he would reasonably assume that his personal umbrella policy could not have contained such a exclusion." 642 A.2d at 1041. The Appellate Division rejected that argument holding:

> The Legislature has not required automobile insureds to purchase umbrella policies; and there is no legislation dictating the parameters of coverage contained in such policies. Unlike his underlying automobile policy whose scope is defined by statute, Mr. Weitz's umbrella policy is defined by the policy's plain language, unencumbered by the statutory requirements for automobile insurance. Plaintiff suggests no compelling reason to tack onto one form of insurance the statutory requirements governing another. . . . The unambiguous exclusion set forth in Allstate's umbrella policy must be enforced as written.

Id. at 1041-42.

The situation here with respect to the MVFRL is no different from that in Weitz with respect to New Jersey statutory law. In Pennsylvania, as in New Jersey, basic automobile insurance coverage is required by law and the terms of the policies are regulated highly. But neither state requires that an insured carry an excess policy, and neither specifies the scope of coverage for an excess policy. In these circumstances, we conclude, consistently with the Appellate Division's opinion in Weitz under New Jersey law, that Pennsylvania law does not provide for the application of the MVFRL to Nathan Rubin's excess policy.

The Rubins also argue that inasmuch as the application which Nathan Rubin signed did not include the exclusion, Electric unilaterally altered the contract by inserting the exclusion into the contract. They thus contend that they are not bound by the exclusion. We reject this contention.

The application was an uncomplicated two-page form which hardly could have been understood to include all the terms and conditions of the policy to be issued. With respect to automobile coverage, the application simply indicated that the insured was required to have underlying liability limits of $100,000/300,000 for bodily injury and $10,000 for property damage or a $300,000 single-limit policy. But the application did not deal with matters usually contained in a policy with respect to scope of coverage, such as the exclusion of liability if the insured by his acts intended to cause the injury. Indeed, under the Rubins' argument, the small premium that Nathan Rubin

paid even would have purchased coverage for use of his automobile as a taxicab, a recognized high risk which an insured could not expect to be covered at the same premium charged for a privately used automobile. Furthermore, the application did not address procedural matters such as the insured's duty to notify the company when there was an injury or occurrence likely to involve coverage under the policy. Thus, the application Nathan Rubin signed merely was a binder which contemplated that the terms and conditions of the insurance coverage would appear in the actual policy. See Terry v. Mongin Ins. Agency, 314 N.W.2d 349, 352 (Wisc. 1982); Di Santo v. Enstrom Helicopter Corp., 489 F. Supp. 1352, 1358 (E.D. Pa. 1980) ("final policy may be lengthy, containing limitations, conditions, and exclusions which cannot be stated in a telex message (or a short memorandum)").

We hasten to add two caveats to our conclusion that the incomplete application could not trump the terms of the policy. First, we recognize, as did the district court, that the Rubins' argument would have been stronger if the accident had occurred before the first policy had been issued. Cf. Collister v. Nationwide Life Ins. Co., 388 A.2d 1346 (Pa. 1978) (when insured applied for life insurance and paid a premium for two months in advance and was killed during that period before company issued policy, there was coverage even though insured had not obtained medical examination required by the application and the receipt for it before coverage was to be effective), cert. denied, 439 U.S. 1089, 99 S.Ct. 871 (1979). Here, however, the policy was issued and then renewed three times before the accident.

Therefore Nathan Rubin had an adequate opportunity to read the terms and conditions of the policy. Second, the exclusion did not vary an express term of the application. Thus, the permanent policy did not increase the required limits for the underlying coverage over those specified in the application. Consequently, Nathan Rubin cannot say reasonably that he applied for one thing but received something else.[2] In these circumstances, there is no reason why the parties' rights and obligations should not be determined under the policy rather than the application.

## III. CONCLUSION

In view of the aforesaid, we will affirm the order of February 18, 1994.

---

[2]. The Rubins make the following additional arguments: that the policy is unconscionable under Worldwide Underwriters Ins. Co. v. Brady, 973 F.2d 192; Electric acted in bad faith contrary to 42 Pa. Cons. Stat. Ann. § 8371 (Supp. 1994); Electric violated additional sections of the Unfair Insurance Practices Act, 40 Pa. Cons. Stat. Ann. § 1171.5(a)(1)(i), (2) and (10)(vi); and Electric violated the Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, § 201-1 (1993). We have examined these contentions and find them without merit.