767 A.2d 1018 (2001)
SONOCO PRODUCTS COMPANY, INC., Plaintiff, and
Lexington Insurance Company, Plaintiff/Intervenor Appellant,
v.
The FIRE & CASUALTY INSURANCE COMPANY OF CONNECTICUT, Defendant, and
United States Fire Insurance Company, Defendant/Third Party Plaintiff-Respondent,
v.
Home Insurance Company, Third Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued February 20, 2001.
Decided March 8, 2001.
Vincent J. Velardo, Montclair, argued the cause for plaintiff/intervenor-appellant *1019 (Velardo & Velardo, attorneys; Mr. Velardo, on the brief).
Janet L. Poletto, Springfield, argued the cause for defendant/third party plaintiff-respondent (Hardin, Kundla, McKeon, Poletto & Polifroni, attorneys; Ms. Poletto, of counsel and on the brief).
Before Judges PETRELLA, NEWMAN and BRAITHWAITE.
The opinion of the court was delivered by NEWMAN, J.A.D.
This appeal involves a dispute as to primacy and apportionment of coverage between two umbrella carriers, U.S. Fire Insurance Company ("U.S.Fire") and Lexington Insurance Company ("Lexington"). The insurance coverage dispute arises out of an accident that occurred on November 15, 1993 at Ball-In-Con Glass Packaging Corp. in Carteret, New Jersey, in which Ramon Perez ("Perez"), an employee of Ball-In-Con, sustained a paralyzing injury while driving a forklift in the process of unloading pallets from a tractor trailer. The tractor trailer was owned and operated by Blue Diamond Company ("Blue Diamond"). Sonoco Products Company, Inc. ("Sonoco") loaded the pallets onto the tractor trailer.
At the time of the accident, Blue Diamond was insured by two policies: a primary motor vehicle liability policy with limits of $1,000,000 per accident issued by the Fire and Casualty Insurance Company of Connecticut ("FCICC"), and an excess policy with limits of $4,000,000 per occurrence issued by U.S. Fire. The absolute minimum annual premium for the FCICC primary policy was $708,599; the minimum annual premium for the U.S. Fire excess policy was $160,000.
At this time, Sonoco was also insured by two policies: a primary commercial automobile insurance policy with limits of $2,000,000 per occurrence issued by Home Insurance Company ("Home"), and an umbrella liability coverage policy issued by Lexington with applicable limits of $25,000,000 per occurrence. The minimum annual premium for the Home primary policy was indecipherable; the minimum annual premium for the Lexington excess policy was $198,000.
Sonoco instituted this declaratory judgment action during the pendency of the underlying Perez suit, seeking a declaration that it was an additional insured under the FCICC and U.S. Fire policies issued to Blue Diamond, and that the FCICC policy was required to provide primary coverage to Sonoco and defend it in the Perez suit, since Sonoco's liability arose out of the use of the Blue Diamond vehicle. Both FCICC and U.S. Fire denied any obligation to defend or indemnify Sonoco regarding the Perez suit.
The Perez suit ultimately settled for $4.25 million. FCICC paid its limit of $1,000,000; Home paid its limit of $2,000,000; and Lexington contributed $1.25 million. U.S. Fire did not contribute to the settlement. Following the settlement, Lexington intervened as a co-plaintiff in the declaratory judgment action against FCICC and U.S. Fire, seeking recovery of its $1.25 million contribution to the settlement. U.S. Fire then filed a third-party complaint to join Home.
In granting summary judgment to U.S. Fire, the trial judge declared that U.S. Fire need not contribute to the Perez settlement until the FCICC, Home, and Lexington polices were first exhausted. In so ruling, the court found that U.S. Fire's "other insurance provision" did not violate public policy, and that it was a valid excess clause.

I.
On appeal, Lexington argues that U.S. Fire is obligated to contribute to the Perez settlement. U.S. Fire responds that its "Automobile Limitation," which confined excess coverage "to the coverage provided... in the `Underlying Insurance,'" relieved it of any obligation to provide coverage *1020 for the Perez settlement, since the underlying FCICC insurance policy contained a provision that purported to bar coverage for "`Bodily Injury' or `Property Damage' resulting from the movement of property by a mechanical device." U.S. Fire contends that this exclusion in the FCICC underlying policy "squarely precludes coverage for the Perez claim which beyond question involved the movement of property (pallets) by a mechanical device (a forklift)." Therefore, argues U.S. Fire, "since the FCICC policy by its terms excludes coverage for claims such as the Perez claim, the U.S. Fire policy likewise excludes coverage for such claims."
Judge Stroumtsos held that the FCICC policy was required by statute to provide coverage for the Perez claim, thereby invalidating the aforementioned exclusionary language contained in the FCICC policy. See N.J.S.A. 39:6B-1. However, U.S. Fire points out that Judge Stroumtsos made no ruling as to whether this invalidation would also affect the scope of coverage contained in the U.S. Fire umbrella policy. Thus, argues U.S. Fire, the exclusion contained in the FCICC policy, although invalidated by Judge Stroumtsos, "must be given effect and enforced as written, as respects U.S. Fire."
It is well established in this state that "[w]henever an insurance policy and a governing statute are in conflict, the statute controls, and the policy is automatically amended by operation of law to conform to the statutory standard." Allstate Ins. Co. v. Malec, 104 N.J. 1, 6, 514 A.2d 832 (1986); see Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 373, 225 A.2d 570 (1966) (amending the insurance policies at issue to contain coverage "no less broad than that of the statute"); Fiscor v. Atlantic County Board of Chosen Freeholders, 293 N.J.Super. 19, 30, 679 A.2d 678 (App.Div.), certif. denied, 147 N.J. 263, 686 A.2d 764 (1996) (explaining that "even if the County had obtained an insurance policy at odds with the statutory standards, the court would, by operation of law, amend the policy to conform to the statutory requirements"); Kattoura v. Patel, 262 N.J.Super. 34, 42, n. 4, 619 A.2d 1031 (App.Div. 1993) (explaining that "even if the AMI policy failed to include the coverage required by N.J.S.A. 45:21-1 et seq., we would deem the policy amended to provide the minimum coverage required by the statute and to conform to the parties' agreement that the coverage provided by Excelsior would be primary"); American Home Assurance Co. v. Hartford Ins. Co., 190 N.J.Super. 477, 485-86, 464 A.2d 1128 (App.Div.1983); accord Appleman, 12 Insurance Law and Practice § 7041, at 166 (1981) ("The statutory law in force and effect at the time of the issuance of a policy becomes a part of the contract as though expressly written therein, and a policy must be considered to contain those requirements").
The underlying FCICC policy was "automatically amended by operation of law to conform to the statutory standard," which obligated it to provide coverage for the precise type of `bodily injury' it purported to exclude. Allstate, supra, 104 N.J. at 6, 514 A.2d 832. The "Automobile Limitation" contained in the U.S. Fire excess policy clearly stated that the scope of excess coverage was "limited to the coverage provided ... in the `Underlying Insurance,' " and that "[i]f coverage is not provided by such [underlying insurance] policies, coverage is excluded from this policy." By tying its coverage to that provided by the underlying FCICC policy, U.S. Fire became obligated to provide coverage. Because coverage was in fact provided by the underlying FCICC policy, which was automatically amended to conform to New Jersey law, U.S. Fire became bound by its own policy language to provide excess coverage for the Perez settlement.
The result here is not at odds with our decision in Weitz v. Allstate Insurance Co., 273 N.J.Super. 548, 642 A.2d 1040 (App. Div.1994). There, the umbrella insurance policy issued by defendant to plaintiff's *1021 husband (Mr. Weitz) clearly stated that coverage would not extend to a claim for personal injury by "an insured," which the policy defined to include members of Mr. Weitz's household. Id. at 550, 642 A.2d 1040. Plaintiff was a member of Mr. Weitz's household. Ibid. Therefore, "perceiv[ing] nothing ambiguous about the policy's exclusion provision," we enforced the exclusion as written in the policy. Ibid.
In discussing the umbrella policy in Weitz, we explained that "[a]s its coverages depart from auto and homeowners' policies, it should not be a surprise that its exclusions are also different." Id. at 551, 642 A.2d 1040. This is readily distinguishable from the language contained in the U.S. Fire policy, which purported to exclude coverage "if coverage is not provided by such [underlying insurance] policies." Therefore, the fact that U.S. Fire's policy contemplated providing coverage to the same extent as provided in the underlying policy, rather than departing from the underlying coverage as in Weitz, distinguishes the present situation from Weitz.
In Electric Ins. Co. v. Rubin, 32 F.3d 814, 816 (3d Cir.1994), the Third Circuit, applying Pennsylvania law, affirmed the District Court's grant of summary judgment in favor of plaintiff Electric Insurance Company ("Electric"), declaring that Electric was not obligated to provide coverage under a personal excess liability insurance policy issued by Electric to defendant Nathan Rubin for claims made by Patricia Rubin, defendant's wife, arising from an automobile accident. Mrs. Rubin's medical bills totaled $746,489.78, but the primary automobile insurance policy on the Rubin's vehicle contained a limit of only $100,000. Ibid.
The excess policy at issue contained the following provision: "we do not provide Liability Coverage for any insured ... for personal injury to you or your relative." Id. at 815. The District Court found that "it was undisputed that the excess policy excluded coverage for Patricia Rubin's claim." Ibid. The District Court, while acknowledging that Pennsylvania law invalidates family exclusions in primary automobile insurance policies, held that this "interdiction was immaterial because excess liability insurance is not governed by the [Motor Vehicle Financial Responsibility Law] MVFRL." Id. at 816. The Third Circuit found no instance in which a Pennsylvania court held that an excess policy was subject to the MVFRL, and opined that the Pennsylvania Supreme Court would not subject an excess policy to the requirements of the MVFRL. Id. at 818. Therefore, the Court enforced the exclusion contained in the excess policy as written. Id. at 820. Again, this case involved a clear exclusion provision in the excess policy that did not purport to coordinate coverage with the underlying insurance policy, as U.S. Fire's policy does.
In this regard, Doto v. Russo, 140 N.J. 544, 659 A.2d 1371 (1995), is instructive. Doto involved the issue of whether an umbrella insurance policy should provide uninsured motorist (UM/UIM) coverage to the same extent as the primary liability insurance policy. Id. at 552, 659 A.2d 1371. The Court reasoned that "[i]n the absence of a requirement pursuant to a UM statute that UM/UIM coverage be equal to liability coverage, the general rule appears to be that umbrella policies should not be understood to provide UM/UIM coverage." Id. at 555, 659 A.2d 1371.
The Court noted that "[a]n insurance policy is a contract," which is "often unilaterally `prepared by the company's experts, (persons) learned in the law of insurance who serve its interest in exercising their draftsmanship art.'" Ibid, (quoting Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1, 7-8, 170 A.2d 800 (1961)). The Court considered whether "more precise language by the insurer, if chosen, `would have put the matter beyond reasonable question.'" Id. at 557, 659 A.2d 1371 (quoting Mazzilli supra, 35 N.J. at 7, 170 A.2d 800). Ultimately, the Court concluded that both the insured and insurer "acted on the assumption and expectation that the umbrella policy *1022 provided UM/UIM coverage." Id. at 558, 659 A.2d 1371. The Court therefore found that the insurer was estopped from denying coverage. Id. at 560, 659 A.2d 1371.
In the final analysis, "more precise language by [U.S. Fire], if chosen, `would have put the matter beyond reasonable question.'" Id. at 557, 659 A.2d 1371 (quoting Mazzilli, supra, 35 N.J. at 7, 170 A.2d 800). The language contained in U.S. Fire's "Automobile Limitation" was simply insufficient.
We wish to make it indelibly clear that we are not extending the statutory requirements of primary automobile insurance to excess or umbrella policies, an argument rejected by both the Weitz and Rubin Courts. Rather, we are simply requiring that U.S. Fire be held to the terms of its policy purporting to limit coverage to the coverage provided through the underlying policy, which was amended by operation of law in this particular case. Doto, supra, 140 N.J. at 556, 659 A.2d 1371.

II.
Lexington argues that the "other insurance" provision in the U.S. Fire excess policy constitutes an illegal "escape clause," whereas its "other insurance" provision contained a legitimate "excess clause." Therefore, argues Lexington, because U.S. Fire's escape clause, which attempts to avoid all liability, is void as against public policy, it should be given no effect, and U.S. Fire should bear liability for the entire $1.25 million remaining after the two primary carriers contributed to the Perez settlement. The "Other Insurance" clause contained in the U.S. Fire policy provided:
If there is any other collectible insurance available to the "Insured" (whether such insurance is stated to be primary, contributing, excess or contingent) that covers a loss that is also covered by this policy, the insurance provided by this policy will apply in excess of, and shall not contribute with, such insurance. This Condition ... does not apply to any insurance policy purchased specifically (and which is so specified in such insurance policy) to apply in excess of this policy.
The Lexington policy's "Other Insurance" clause provided:
If other valid and collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder, this insurance shall be excess of, and shall not contribute with such other insurance. Excess insurance over the limits of liability expressed in this policy is permitted without prejudice to this insurance, and the existence of such insurance shall not reduce any liability under this policy.
The only apparent difference between these two policies is that the U.S. Fire policy contained a parenthetical, in which "other collectible insurance" was defined to encompass "primary, contributing, excess or contingent [insurance,]" whereas no similar parenthetical or definition attempting to enlarge the scope of the phrase "other valid and collectible insurance" was contained in the Lexington policy. For all intents and purposes, the policies are identical in all other respects.
Lexington is therefore relegated to the tenuous position of arguing that the parenthetical phrase defining the scope of "other collectible insurance" transformed U.S. Fire's excess clause into an escape clause, since to take issue with any other aspect of U.S. Fire's provision would be to argue that its own clause was invalid as well.
This court has previously dealt with situations in which two insurance contracts covered the same loss, "but each reject[ed] primary responsibility because of the existence of the other contract." Starks v. Hospital Serv. Plan of N.J., Inc., 182 N.J.Super. 342, 352, 440 A.2d 1353 (App. Div.1981), aff'd, 91 N.J. 433, 453 A.2d 159 (1982). In Starks, we explained that our Supreme Court has rejected the approach taken by many courts of reconciling conflicting *1023 "Other Insurance" provisions so "that one, but not both, of such provisions must yield in order to establish one policy as the `primary' insurance upon which the `other insurance' provision of the `secondary' policy might operate." Id. at 352-53, 440 A.2d 1353 (quoting Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 559, 147 A.2d 529 (1959)). Such "mutually repugnant" provisions become inoperative, and the general coverage of each policy applies, such that "each company is obligated to share in the cost of the settlement and expenses." Id. at 353, 440 A.2d 1353 (quoting Cosmopolitan, supra, 28 N.J. at 562, 147 A.2d 529).
In Starks, we reasoned that the "existence in each of the clauses of language which establishes precisely the same order of payment for each coverage" is the "predicate of mutual repugnancy." Ibid. However, if either policy "clearly expressed" an intention to provide coverage "prior to or subsequent to the other, that intention will ordinarily be enforced by the courts." Ibid. In this case, U.S. Fire would, therefore, have this court adopt, as the trial court evidently did, that this "clearly expressed" requirement was satisfied by the parenthetical included in its policy but absent from the Lexington policy. Not so.
Because the two "Other Insurance" provisions are virtually identical in every respect (aside from the parenthetical), they should be deemed mutually repugnant, such that each insurer "is obligated to share in the cost of the settlement and expenses." Id. at 353, 440 A.2d 1353 (quoting Cosmopolitan, supra, 28 N.J. at 562, 147 A.2d 529). Such was the result in American Nurses Ass'n v. Passaic Gen. Hosp. ., 98 N.J. 83, 91, 484 A.2d 670 (1984), where the Court reiterated that "the loss should be equally apportioned" in cases involving competing "Other Insurance" provisions contained in excess insurance policies. See Ambrosio v. Affordable Auto Rental, Inc., 307 N.J.Super. 114, 127, 704 A.2d 572 (App.Div.1998) (apportioning coverage among the four insurers involved, each of which purported to provide excess coverage over all other collectible insurance).
As our Supreme Court explained in Cosmopolitan, supra:
Both policies evidence the same intent with respect to insuring the risk and also with respect to avoiding liability in the event of adequate coverage by another carrier. Where the intent is clear, the fact that one of the insurers stated its intent more specifically than the other is not significant.
[Id. at 561, 147 A.2d 529.]
This applies with equal force to the competing "Other Insurance" provisions here. Therefore, U.S. Fire will receive no benefit from including the parenthetical phrase in its provision, and its policy will not be elevated to a position of a super-excess insurer as a result of that parenthetical. Equal apportionment of the loss between U.S. Fire and Lexington is appropriate. As the Cosmopolitan Court stated, "We think that such a conclusion affords the only rational solution of the present dispute." Id. at 562, 147 A.2d 529.
The judgment is reversed and Lexington and U.S. Fire are ordered to contribute $625,000 each toward the Perez settlement.