[No. G043956. Fourth Dist., Div. Three. Oct. 27, 2011.]

PALP, INC., et al., Plaintiffs and Appellants, v.
WILLIAMSBURG NATIONAL INSURANCE COMPANY, Defendant and
Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.

## Counsel

Christensen Ehret, Mark E. Christensen and Scott J. Sterling for Plaintiffs and Appellants.

Berman, Berman & Berman and Spencer A. Schneider for Defendant and Respondent.

## Opinion

**O'LEARY, Acting P. J.**—Palp, Inc., doing business as Excel Paving (Excel Paving), and its commercial general liability (CGL) insurer Virginia Surety Company, Inc. (Virginia Surety), appeal from a judgment after the trial court granted Williamsburg National Insurance Company's (Williamsburg) summary judgment motion in this insurance coverage case. Williamsburg provided commercial lines automobile/trucker's insurance on a dump truck

owned by its insured, REH Trucking, Inc. (REH), which was providing hauling services on Excel Paving's parking lot demolition jobsite. Excel Paving was a named additional insured on the Williamsburg policy. An Excel Paving employee struck the cab of the REH dump truck with the bucket of an excavator being used to load broken asphalt into a different vehicle, not the dump truck, injuring the dump truck driver and damaging the truck.

The dump truck driver sued Excel Paving and its employee for negligence. The physical-damage insurer of the dump truck sued Excel Paving and its employee in subrogation. Virginia Surety agreed to defend and indemnify Excel Paving (and its employee) in both lawsuits under the CGL policy, but it and Excel Paving also tendered defense to Williamsburg under the dump truck's automobile insurance policy. Williamsburg declined the tender. Virginia Surety and Excel Paving filed the instant action against Williamsburg for declaratory relief, equitable contribution, equitable indemnity, breach of the contractual duty to defend and indemnify, and bad faith.

The trial court granted Williamsburg's summary judgment motion, agreeing with Williamsburg there was no possibility of coverage because the automobile policy excluded coverage for claims of bodily injury or property damage resulting from "the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered auto." Although the excavator was not involved in loading or unloading the damaged dump truck, the trial court agreed the exclusion did not require a relationship between the property being moved and the covered vehicle, only that the injury result from an unattached mechanical device that was moving property. We conclude the exclusion did not apply under the circumstances. We reverse the judgment and, for reasons explained in the unpublished part of our opinion, remand to the trial court with directions to grant Williamsburg's alternative motion for summary adjudication of Virginia Surety's equitable indemnification cause of action and Excel Paving's bad faith cause of action.

I

A. *The Accident*

On July 23, 2007, REH was performing services for Excel Paving, hauling away loads of excavated asphalt from a parking lot Excel Paving was demolishing. Christian Suarez, an REH employee, was driving an REH-owned dump truck that was being loaded.

Excel Paving employee, Robert Schroeder, was using a hydraulic excavator to demolish the parking lot surface, scoop up broken pieces of asphalt, and

load them into some of the trucks. Excel Paving employee, Pat LaPaglia, was using a front-end loader to similarly load asphalt into other waiting trucks. LaPaglia had finished loading Suarez's truck with asphalt, and Suarez was waiting to leave the jobsite. As Suarez was preparing to drive away, the boom arm of the excavator being operated by Schroeder swung around, and the bucket at the end of the boom arm struck the cab of Suarez's dump truck. The excavator bucket was empty when it struck Suarez's dump truck. Suarez was injured, and the dump truck was damaged.

## B. *The Insurance Policies*

When the accident occurred Excel Paving was insured for liability arising out of its operations under a CGL policy issued by Virginia Surety. The Virginia Surety policy provided $1 million in coverage for bodily injury or property damage for which Excel Paving was liable arising out of its paving operations including from its use of "mobile equipment" defined as, among other things, "[v]ehicles designed for use principally off public roads; [¶] [v]ehicles that travel on crawler treads; [¶] [and v]ehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted: [¶] . . . [¶] . . . [r]oad construction or resurfacing equipment such as graders, scrapers or rollers . . . ."

REH was insured for liability (also $1 million in coverage) arising out of its trucking operations under a commercial lines policy for truckers issued by Williamsburg. Excel Paving was named an additional insured under the Williamsburg policy on an additional insured endorsement "with respect to liability arising out of operations performed for [Excel Paving] by or on behalf of [REH]" subject to the "terms, conditions, agreements, [and] limitations of th[e] policy." The Williamsburg policy provided liability coverage for damages an insured must pay because of bodily injury or property damage to which its insurance applies, "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' " The dump truck Suarez was driving was a covered auto under the policy.

The Williamsburg policy also contained a "mechanical device" exclusion. It excluded coverage for bodily injury or property damage "resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered 'auto'."

## C. *The Lawsuits, Tenders and Settlements*

Suarez sued Excel Paving and Schroeder for bodily injuries he sustained in the accident. His complaint alleged Schroeder negligently operated the excavator and Excel Paving failed to maintain appropriate safety procedures. In

their answer, Excel Paving and Schroeder raised Suarez's comparative negligence as an affirmative defense.[1]

Lloyd's of London (Lloyd's), REH's property damage insurer, filed a subrogation action against Excel Paving and Schroeder. Lloyd's alleged Excel Paving's and Schroeder's negligence caused damage to the truck, and it sought to recover the $48,372 it paid out to REH. The Suarez and Lloyd's actions were eventually consolidated (hereafter collectively referred to as the underlying action).

Virginia Surety accepted the tender of Excel Paving and Schroeder's defense in both actions, without a reservation of rights, but it and Excel Paving also tendered Excel Paving's defense in both actions to Williamsburg. Williamsburg declined the tender based on the mechanical-device exclusion in the Williamsburg policy. Virginia Surety paid all defense costs and eventually settled Suarez's bodily injury claim for $319,000.

### D. Current Action/Summary Judgment Motions

Virginia Surety and Excel Paving filed this action against Williamsburg. The operative complaint, the second amended complaint, contained causes of action for declaratory relief on behalf of both Virginia Surety and Excel Paving, breach of contract and breach of the covenant of good faith and fair dealing on behalf of Excel Paving, and equitable indemnity and equitable contribution on behalf of Virginia Surety.

On the parties' cross motions for summary judgment, or in the alternative summary adjudication, the trial court granted Williamsburg's summary judgment motion and denied Virginia Surety and Excel Paving's motion as moot. The trial court concluded, based on the undisputed facts, the mechanical device exclusion eliminated any potential for coverage under the Williamsburg policy and therefore Williamsburg had no duty to defend or indemnify Excel Paving in the underlying actions.

## II

### A. General Legal Principles

"[A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for

---

[1] Excel Paving also filed a cross-complaint against REH in the Suarez action alleging an oral agreement with REH to hold Excel Paving harmless for damages, but it dismissed the cross-complaint after REH filed a motion for judgment on the pleadings.

coverage under the insuring agreement. [Citations.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 [44 Cal.Rptr.2d 370, 900 P.2d 619] (*Waller*).) The insurer must defend any claim that would be covered if it were true, even if it is "groundless, false or fraudulent." (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168] (*Gray*).) "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.]" (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) "Thus, when a suit against an insured alleges a claim that potentially could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to undisputed facts, that *the claim cannot be covered.* In order to establish a duty to defend, an insured need only establish the existence of a potential for coverage; while to avoid the duty, the insurer must establish the *absence* of any such potential. [Citation.]" (*Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1186 [96 Cal.Rptr.2d 136], fn. omitted.) Doubts concerning the potential for coverage and the existence of duty to defend are resolved in favor of the insured. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299–300 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose*).)

 "[W]hether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy" (*Waller, supra,* 11 Cal.4th at p. 19) and extrinsic facts "*known by the insurer* at the *inception* of the third party lawsuit . . . ." (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114 [44 Cal.Rptr.2d 272].) The insurer's defense duty is obviated where the facts are undisputed and conclusively eliminate the potential the policy provides coverage for the third ·party's claim. (*Waller, supra,* 11 Cal.4th at p. 19.)

An insurer is entitled to summary judgment that no potential for indemnity exists if the evidence establishes no coverage under the policy as a matter of law. (*County of San Diego v. Ace Property & Casualty Ins. Co.* (2005) 37 Cal.4th 406, 414 [33 Cal.Rptr.3d 583, 118 P.3d 607] (*Ace*).) " ' "We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy." ' " (*Ace, supra,* 37 Cal.4th at p. 414; see also *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 [135 Cal.Rptr.2d 505] ["When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract."].)

■ "Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 647 [3 Cal.Rptr.3d 228, 73 P.3d 1205] (*MacKinnon*).) ■ " 'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.)" ' " (*MacKinnon, supra*, 31 Cal.4th at pp. 647–648.)

■ An insurance policy provision is considered to be ambiguous when it is capable of at least two reasonable constructions. (*Ace, supra*, 37 Cal.4th at p. 415; *MacKinnon, supra*, 31 Cal.4th at p. 648.) " 'But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.' " (*MacKinnon, supra*, 31 Cal.4th at p. 648.) "Courts will not strain to create an ambiguity where none exists." (*Waller, supra*, 11 Cal.4th at pp. 18–19.) " ' " 'If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.' [Citation.]" [Citation.]' [Citation.]" (*Ace, supra*, 37 Cal.4th at p. 415.)

■ An insurance policy's coverage provisions must be interpreted broadly to afford the insured the greatest possible protection, while a policy's exclusions must be interpreted narrowly against the insurer. (*MacKinnon, supra*, 31 Cal.4th at p. 648.) The exclusionary clause must be " '*conspicuous, plain and clear*.' " (*State Farm Mut. Auto. Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 202 [110 Cal.Rptr. 1, 514 P.2d 953].) "This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded." (*MacKinnon, supra*, 31 Cal.4th at p. 648.)

The insured has the burden of establishing the claim comes within the scope of coverage, and the insurer has the burden of establishing the claim comes within an exclusion. (*MacKinnon, supra*, 31 Cal.4th at p. 648.) To prevail, the insurer must establish its interpretation of the policy is the only reasonable one. (*Id.* at p. 655.) Even if the insurer's interpretation is reasonable, the court must interpret the policy in the insured's favor if any other reasonable interpretation would permit coverage for the claim. (*Ibid.*)

## B.  *Duty to Defend/Indemnify*

With the above principles in mind we turn to the issue at hand: whether Excel Paving had any possibility of coverage under the Williamsburg policy for the damages caused to Suarez and the REH dump truck. We conclude there was coverage and the trial court erred by granting Williamsburg's summary judgment motion.

We first consider whether the claim came within the scope of the coverage clause of the Williamsburg policy. The burden on this issue was on the insured. (*MacKinnon, supra*, 31 Cal.4th at p. 648.) We need not spend undue time on this point as Williamsburg does not seriously dispute the accident fell within the policy's insuring clause.[2] The Williamsburg policy states it will "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' " The accident arose out of REH's ownership, maintenance or use of the covered dump truck given that the dump truck was on the Excel Paving jobsite having been engaged by Excel Paving to haul away demolished asphalt.

Furthermore, Excel Paving was an additional insured on the policy "with respect to liability arising out of operations performed for [Excel Paving] by or on behalf of [REH]" so it is also an "insured." We additionally observe that because Excel Paving was an additional insured under a blanket additional insured endorsement, i.e., one that was not limited to coverage for the additional insured's vicarious liability for negligent conduct by the named insured, Excel Paving is provided coverage by the policy for accidents falling within the coverage clause without regard to whether injury was caused by REH (the named insured) or Excel Paving (the additional insured). (See *Vitton*

---

[2] Williamsburg's summary judgment motion asserted there was no potential for coverage because of its policy's mechanical device exclusion; it did not claim the accident was not within the insuring clause of its policy. In their cross motion for summary judgment, Virginia Surety and Excel Paving specifically asserted the accident did fall within the insuring clause of the Williamsburg policy, and in its opposition to the cross motion, Williamsburg did not dispute that assertion—again arguing the mechanical device exclusion precluded any potential for coverage.

In their appellants' opening brief, Virginia Surety and Excel Paving again asserted the accident falls within the insuring clause of the Williamsburg policy, to which Williamsburg responded only that it "concede[d] for purpose of its [summary judgment/summary adjudication] motion that Suarez's claim for bodily injury and Lloyd's claim for property damage potentially fell within the policy's insuring agreement." At oral argument, Williamsburg for the first time argued the accident did not fall within its policy's insuring clause. "We do not consider arguments that are raised for the first time at oral argument." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 [110 Cal.Rptr.3d 129].)

*Construction Co., Inc. v. Pacific Ins. Co.* (2003) 110 Cal.App.4th 762, 767–768 [2 Cal.Rptr.3d 1] ["the fact that an accident is not attributable to the named insured's negligence is *irrelevant* when the additional insured endorsement does not purport to allocate or restrict coverage according to fault"]; *Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.* (2001) 94 Cal.App.4th 842, 851–852 [115 Cal.Rptr.2d 26] [where additional insured endorsement did not contain language limiting coverage to vicarious liability, coverage existed regardless of additional insured's fault]; *Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321, 330 [81 Cal.Rptr.2d 557] ["additional insured is covered without regard to whether injury was caused by the named insured or the additional insured"]; see also *Hartford Casualty Ins. Co. v. Travelers Indemnity Co.* (2003) 110 Cal.App.4th 710, 716–717 [2 Cal.Rptr.3d 18] [same]; cf. *Pardee Construction Co. v. Insurance Co. of the West* (2000) 77 Cal.App.4th 1340, 1361 [92 Cal.Rptr.2d 443] [no coverage for additional insured because endorsement contained language limiting coverage to additional insured's vicarious liability for named insured's negligence].)

We next consider whether the mechanical device exclusion relied upon by Williamsburg excludes coverage. As already noted, the burden in this regard is with the insurer. (*MacKinnon, supra,* 31 Cal.4th at p. 648.) Exclusionary clauses are interpreted narrowly. (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704].) Although when the meaning is clear, such a clause will be enforced (*California State Auto. Assn. Inter-Ins. Bureau v. Warwick* (1976) 17 Cal.3d 190, 195, fn. 4 [130 Cal.Rptr. 520, 550 P.2d 1056]), where there is ambiguity the clause must be construed in the insured's favor consistent with its reasonable expectations (*Gray, supra,* 65 Cal.2d at pp. 271–272; see *Montrose, supra,* 6 Cal.4th at p. 299).

Excel Paving argues the mechanical device exclusion does not apply to the undisputed facts of this case. The primary gist of its argument is the exclusion must be narrowly interpreted to apply only when the movement of property (i.e., the asphalt) by the mechanical device not attached to the covered vehicle (i.e., the excavator), was in relation to the loading or unloading of the covered vehicle (i.e., the REH dump truck). It is undisputed the excavator was not loading or unloading Suarez's truck (that task was performed by a different mechanical device—the front-end loader), and, furthermore, Suarez's truck was finished being loaded when the accident occurred. Williamsburg argues no interpretation of the mechanical device exclusion is needed—its meaning is clear and unambiguous on its face. It contends the mechanical device exclusion applies whenever an accident involving a covered vehicle results from the movement of property by a mechanical device that is not attached to the covered vehicle, period. There is no requirement the movement of the property have anything to do with loading or unloading the covered vehicle.

We cannot agree with Williamsburg's broad reading of the exclusion—such a construction could lead to exclusion of coverage for the most random of acts simply because a mechanical device that was moving property was involved. The exclusion applies to damage "resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered 'auto'." But movement where and movement why? An exclusion must be read narrowly and in accordance with the reasonable expectations of an insured. The references in the exclusion to "hand trucks" and mechanical devices that are attached to the covered vehicle both support that the "movement of property" must be in relation to the covered auto, i.e., damage resulting from the movement of property *to or from* the covered auto by a mechanical device (other than a hand truck) unless the device is attached to the covered auto.

■ There is no reported California case considering the mechanical device exclusion. There are, however, numerous decisions from sister states and federal courts, all of which discuss the mechanical device exclusion in the context of the movement of property *in relation to* the covered vehicle— more specifically the loading or unloading of the covered vehicle. (See *Travelers Indemnity Co. v. General Star Indemnity Co.* (S.D.Ala. 2001) 157 F.Supp.2d 1273, 1288 [forklift loading steel into covered vehicle— mechanical device exclusion applies]; *Assicurazioni Generali S.P.A. v. Public Service Mutual Ins. Co.* (E.D.Pa. 1995) 882 F.Supp. 1537, 1538, 1541 [freight elevator operator injured by bedframe unloaded from insured delivery truck—mechanical device exclusion not applicable because elevator (mechanical device) stationary at time of accident so no movement of property by mechanical device]; *Truck Ins. Exchange v. Home Ins. Co.* (Colo.App. 1992) 841 P.2d 354, 355, 358 [mechanical loading device loading cylinders onto covered vehicle—but mechanical device exclusion violates state mandatory coverage laws]; *Continental Ins. Co. v. American Motorist Ins. Co.* (2000) 247 Ga.App. 331 [542 S.E.2d 607, 608, 610] [hydraulic pallet jack being used to unload truck—mechanical device exclusion applies]; *Cobb County v. Hunt* (1983) 166 Ga.App. 409 [304 S.E.2d 403, 405] [pipe being loaded onto covered vehicle by front-end loader—mechanical device exclusion applies]; *Dauthier v. Pointe Coupee Wood Treating, Inc.* (La.Ct.App. 1990) 560 So.2d 556, 557–558 [pilings being unloaded from covered vehicle with forklift— mechanical device exclusion applies]; *Sonoco Products Co., Inc. v. Fire & Casualty Ins. Co. of Connecticut* (App.Div. 2001) 337 N.J. Super. 568 [767 A.2d 1018, 1019, 1020] [forklift unloading pallets from insured tractor trailer—but mechanical device exclusion violates state mandatory coverage laws]; *Parkway Iron & Metal Co. v. New Jersey Manufacturers Ins. Co.* (App.Div. 1993) 266 N.J. Super. 386 [629 A.2d 1352, 1353] [crane unloading sheet metal from covered truck—but mechanical device exclusion violates state mandatory coverage laws]; *General Accident Ins. Co. v. United States*

*Fidelity & Guaranty Co.* (N.Y.App.Div. 1993) 193 A.D.2d 135 [602 N.Y.S.2d 948, 950–951] [water softener tank being unloaded from covered vehicle by pushcart—mechanical device exclusion inapplicable because pushcart could be included in definition of hand truck]; *Sellie v. North Dakota Ins. Guaranty Assn.* (N.D. 1992) 494 N.W.2d 151, 153, 158 [luggage cart being used to unload luggage from insured bus—mechanical device exclusion not applicable because luggage cart was a hand truck]; *Shell Oil Co. v. Employers Ins. of Wausau* (1984) 69 Or.App. 179 [684 P.2d 622, 623–624] [forklift loading oil drums onto covered truck—mechanical device exclusion applies]; *Sisson v. Hansen Storage Co.* (Ct.App. 2008) 313 Wis.2d 411 [756 N.W.2d 667, 670, 677] [forklift being used to unload covered truck—mechanical device exclusion applies].)

█ Williamsburg does not assert the excavator was involved in loading or unloading the dump truck and cites no published case in which the mechanical device exclusion was applied to an accident that was not related to the covered vehicle by use of the mechanical device in connection with loading or unloading the vehicle. Williamsburg cites *Travelers Indemnity Co. v. General Star Indemnity Co., supra,* 157 F.Supp.2d at page 1288, *Continental Ins. Co. v. American Motorist Ins. Co., supra,* 542 S.E.2d at pages 608, 610, and *Dauthier v. Pointe Coupee Wood Treating, Inc., supra,* 560 So.2d at pages 556–558, for the proposition the mechanical device exclusion is clear and unambiguous and therefore enforceable. But in each of those cases the injury was related to loading or unloading the covered vehicle with the unattached mechanical device. Because the movement of property by the excavator bore no relationship to the REH dump truck, i.e., it was not, and had not been, loading or unloading the dump truck, the mechanical device exclusion does not apply. Accordingly, there was coverage for the accident under the Williamsburg policy and summary judgment for Williamsburg was improper.[3]

III[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

The summary judgment is reversed. The matter is remanded to the trial court with directions to: (1) enter a new order denying Williamsburg's motion for summary judgment and granting Williamsburg's motion for summary adjudication of the second amended complaint's third cause of action for

---

[3] For this reason we need not address Virginia Surety and Excel Paving's remaining arguments concerning the applicability of the mechanical device exclusion.

[*]See footnote, *ante,* page 282.

breach of the covenant of good faith and fair dealing and fifth cause of action for equitable indemnity; and (2) conduct further proceedings with respect to the remaining causes of action. Appellants are awarded their costs on appeal.

Fybel, J., and Ikola, J., concurred.