### A00A1267. CONTINENTAL INSURANCE COMPANY v. AMERICAN MOTORIST INSURANCE COMPANY.
(542 SE2d 607)

RUFFIN, Judge.

This appeal arose from a dispute as to which of two insurance companies, Continental Insurance Company ("Continental") or American Motorist Insurance Company ("American"), bore responsibility for a personal injury claim arising from the use of a certain piece of equipment known as a "pallet jack." The trial court granted summary judgment to American and denied the same to Continental. After examining the language of the two insurance policies, we find that the Continental policy provided coverage while the American policy did not. Thus, we affirm.

Neither American nor Continental disputes the facts underlying the personal injury claim which occurred when Nora Wilkes, an employee in the warehouse department of Market Office Products, sustained injuries while providing assistance to Andrew Sheahan, a deliveryman. At Sheahan's request, Wilkes had agreed to help Sheahan push a pallet loaded with copier paper up the ramp outside the warehouse. When Sheahan suddenly lost control of the pallet while he was pulling it up the ramp, Wilkes was injured. Sheahan had been moving the load using a hand-powered device known as a "pallet jack."

---

[16] Id. at 42.

At the time of these events, Sheahan was driving a delivery truck leased by United Stationers Supply Company ("United Stationers") and was employed by TLI, Inc., a company which provided delivery drivers to United Stationers. A contract between United Stationers and TLI required United Stationers to maintain a business automobile liability insurance policy that named TLI as an additional insured for the operation of United Stationers' vehicles by TLI employees. United Stationers purchased such a policy from American. This policy protected against liability for bodily injury claims caused by anyone using a United Stationers' vehicle who had permission to use a covered vehicle unless an exclusion otherwise removed such injury from coverage.

United Stationers had also purchased a comprehensive business policy from Continental which included commercial general liability ("CGL") protection. United Stationers' CGL policy provided liability coverage for bodily injuries but excluded those bodily injuries arising out of the use of any "auto" including loading or unloading. The policy defined "loading and unloading" as the handling of property while it is being moved from an automobile to the place where it is finally delivered. However, the exclusion had an exception — in that unloading "does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or 'auto.'"

Although Wilkes brought her personal injury suit against Sheahan and United Stationers, she later dismissed United Stationers without prejudice and obtained a default judgment for $750,000 against Sheahan, who had failed to answer her complaint. United Stationers supplied a copy of Wilkes' complaint to Arnold Pritsker, a senior vice president at Mesirow Insurance Services, an insurance brokerage firm. Pritsker had procured both the American and Continental policies for United Stationers. He forwarded the complaint to Continental because he "had no reason to believe it was anything other than general liability." In Pritsker's view, the claim fit within general liability coverage since the product had been delivered to the customer, in the sense that it was no longer on the delivery truck.

Continental undertook the defense of United Stationers without a reservation of rights and did not file a declaratory judgment action to ascertain its liability.[1] Although Continental provided a defense to United Stationers, it failed to do so for Sheahan, thereby precipitating the default judgment.[2] American did not receive actual notice of

---

[1] See *Nat. Union Fire Ins. Co. &c. v. American Motorists Ins. Co.*, 269 Ga. 768, 769 (1) (b) (504 SE2d 673) (1998) (excess insurer's assumption of defense for insured even without issuing a reservation of rights did not foreclose subsequent recovery from primary insurer).

[2] *Jefferson Ins. Co. &c. v. Dunn*, 224 Ga. App. 732, 736 (2) (482 SE2d 383) (1997), over-

the incident until May 1994 — nearly three years after it occurred and after the default judgment.[3]

After Wilkes obtained the $750,000 default judgment in state court against Sheahan, she then filed an action in federal court directly against Continental to collect that judgment. In the federal suit, Wilkes claimed to be a third-party beneficiary of the insurance policy issued to United Stationers by Continental. Continental settled the federal case with Wilkes for $450,000, then sued American in the Superior Court of Fulton County to seek reimbursement for the settlement. Both companies moved for summary judgment on the issue of liability, and American prevailed. Continental appeals the trial court's order denying its motion for summary judgment and granting summary judgment to American.

1. Continental contends that the trial court erred in denying its motion for summary judgment. Continental claims that the exclusion in United Stationers' policy with American is ambiguous. Continental argues that American, as the drafter of the exclusion, has the burden of proving that it applies. According to Continental, the pallet jack that Sheahan was using to unload the delivery truck could be considered a "hand truck," and would therefore be covered by the business automobile policy issued by American.

In deciding this issue, we must try to ascertain the intention of the parties by looking to the insurance contract as a whole.[4] In so doing, we consider the ordinary and legal meaning of the words employed in the contract.[5] Although it is certainly true that an exclusionary provision must be construed strictly against the insurer, it is equally true that the construction must be a reasonable one.[6] We find that the construction urged by Continental is not reasonable in the context of this case.

The business automobile policy that United Stationers had with American stated in pertinent part:

B. Exclusions[:] This insurance does not apply to any of the following: 7. HANDLING OF PROPERTY[:] "Bodily injury" or "property damage" resulting from the handling of property: . . . [a]fter it is moved from the covered "auto" to the place where it is finally delivered by the "insured." [and] 8. MOVEMENT OF PROPERTY BY MECHANICAL

---

ruled on other grounds, 269 Ga. 213, 216 (496 SE2d 696) (1998).

[3] See *Leventhal v. American Bankers Ins. Co. &c.*, 159 Ga. App. 104, 108 (283 SE2d 3) (1981) (determination of timeliness should include consideration of prejudice to insurer caused by delay).

[4] *James v. Pa. Gen. Ins. Co.*, 167 Ga. App. 427, 431 (2) (306 SE2d 422) (1983).

[5] *Ryan v. State Farm &c. Ins. Co.*, 261 Ga. 869, 872 (413 SE2d 705) (1992).

[6] *Cobb County v. Hunt*, 166 Ga. App. 409, 410 (304 SE2d 403) (1983).

DEVICE[:] "Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto."

The Continental policy, on the other hand, excluded coverage for bodily injuries arising out of the use of any "auto" and specifically provided that "use" included "loading and unloading." The policy defined "loading and unloading" as the handling of property "[w]hile it is being moved from an . . . 'auto' to the place where it is finally delivered." But an exception to the exclusion applied to personal injuries resulting from "unloading" that involved the movement of property by means of a mechanical device that is not attached to the "auto."

In sum, United Stationers' business automobile policy with American provided coverage for personal injuries involving a hand truck or a mechanical device attached to a covered "auto"; while the Continental comprehensive business policy covered "unloading" by means of a mechanical device, other than a hand truck, not attached to an insured vehicle. Since the bodily injury to Wilkes occurred while Sheahan was handling or delivering or unloading property while using a "pallet jack," the dispositive issue is whether that device can be considered a hand truck. If the object that rolled into Wilkes falls within the ambit of "a mechanical device other than a hand truck," only the policy with Continental would apply. But if the pallet jack falls within the meaning of "hand truck," then only the policy with American would apply.

The pallet jacking device that Sheahan was using is a piece of equipment which uses a hydraulic cylinder to lift a pallet.[7] It has four wheels, two large wheels at the rear and two smaller wheels at the front which support two forks or prongs. This implement is designed so that the two forks can be inserted directly into a pallet and the pallet can then be raised off the floor by hydraulically pumping a handle. This apparatus is capable of lifting loads as heavy as 5,000 pounds. It is undisputed that it was not attached to the delivery truck at the time of the incident and is not intended to attach to a vehicle. Therefore, unless, this "pallet jack" could be considered to be a "hand truck," the exception to the exclusion would not apply.

In construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in

---

[7] By jacking or pumping its handle, the user can lift a heavy pallet or other property onto the blades or forks of the pallet jack, then roll the load to a new location where it can be lowered back to the floor or other surface.

the position of the insured would understand them to mean.[8] "The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney."[9] And, it is the insurer's duty to define clearly and explicitly limitations on coverage.[10]

Here, the ordinary meaning of a "hand truck," is a hand-operated piece of equipment for moving objects. The Random House Webster's Unabridged Dictionary (2nd ed. 1997), a source a layman might consult, defines a hand truck to mean:

> 2. any of various wheeled frames used for transporting heavy objects. 3. Also called *hand truck*, a barrowlike frame with low wheels, a ledge at the bottom, and handles at the top, used to move heavy luggage, packages, cartons, etc. 4. a low, rectangular frame on which heavy boxes, crates, trunks, etc., are moved; a dolly.

(Emphasis in original.)

United Stationers considered a pallet jack to be a separate piece of equipment from hand trucks, and, in fact, United Stationers routinely equipped its delivery drivers with both hand trucks and pallet jacks. Each device was intended to serve distinctly different functions.[11] "The only occasion the drivers had to use the device they were supplied which was actually called a 'hand truck' was to accomplish deliveries 'on very small orders.' "[12] Unlike an ordinary hand truck, the pallet jack's hydraulic pumping mechanism could lift substantially heavier loads.

In the federal litigation between Wilkes and Continental, the district court found that this particular implement is not a hand truck. Although we are not bound by the federal court's finding, we find it illuminating.[13] In the district court's view, the fact that "a pallet jack is designed to carry much larger loads than a dolly or wheelbarrow, and in fact must utilize a hydraulic cylinder so that the loads may be lifted from the ground, suggests that the pallet jack is 'a mechanical device other than a hand truck.' " That court decided that the pallet jack at issue did not fit naturally within the dictionary def-

---

[8] *Jefferson Ins. Co.*, 224 Ga. App. at 736 (2).

[9] Id.

[10] *St. Paul Fire &c. Ins. Co. v. Snitzer*, 183 Ga. App. 395, 397 (1) (358 SE2d 925) (1987).

[11] See *Little Rapids Corp. v. McCamy*, 218 Ga. App. 111-112 (460 SE2d 800) (1995) (pallet jacking device appears to have been referred to as a "hand-operated forklift" and as a "forklift").

[12] Page 10 of the federal order entered in *Wilkes v. Continental Ins. Co.*, Civil No. 1:96-C/V-1392-JEC, quoting from the deposition of Thomas Markowski, the General Operations Manager for United Stationers.

[13] *Wilkes v. Continental Ins. Co.*, supra.

inition or the ordinary understanding of the term "hand truck" as a small dolly or wheelbarrow used to manually lift and move small loads. We see no compelling reason to find otherwise. Accordingly, since a reasonable interpretation of the Continental policy compels the conclusion that the policy provided coverage for the unloading incident, the trial court properly denied Continental's motion for summary judgment.[14]

2. Continental contends that the trial court erred in granting summary judgment to American. Continental claims that the CGL policy and the business automobile policy afforded overlapping coverage and the issue as to which policy provided primary coverage must still be resolved. We do not agree.

In the federal litigation, Continental urged a contrary position. In its brief filed in the district court, Continental argued:

> [t]he insuring provisions and exclusions of the CGL and Business Auto Forms are designed to provide seamless, but not overlapping coverage for different aspects of "unloading." The risks associated with the unloading of commercial vehicles have been deliberately segregated into two coverages. If the unloading was performed by a "hand truck" then the business auto form provides coverage. If, some mechanical device other than a hand truck not attached to the truck was used in the unloading, then the CGL Form provides coverage.

Despite previously arguing that the two policies were not overlapping, Continental now asserts that the loss was covered by both policies. Continental argues that since the exclusionary language in both policies is "identical" and since the federal court found such language "ambiguous," then "the respective exclusions in both policies simultaneously fail, leaving the loss in question covered by both policies." We find Continental's earlier position — that the two insurance policies were intended to provide distinctly different coverage — to be more persuasive. Continental offered no evidence that United Stationers intended to purchase duplicative coverage, and industry practice suggests otherwise.[15] Although the trial court did not explain its decision, a judgment right for any reason will be affirmed.[16]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

---

[14] See *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459, 461 (4) (486 SE2d 684) (1997).

[15] See *Grain Dealers Mut. Ins. Co. v. Pat's Rentals*, 228 Ga. App. 854, 855-856 (a) (492 SE2d 702) (1997) (business automobile policy and CGL policy may cover different risks to avoid overlapping coverage and reduce premiums).

[16] *Precise v. City of Rossville*, 261 Ga. 210, 212 (3) (403 SE2d 47) (1991).

DECIDED NOVEMBER 21, 2000 —
RECONSIDERATION DENIED DECEMBER 14, 2000 — 

*Drew, Eckl & Farnham, James M. Poe*, for appellant.
*Orr & Orr, E. Wycliffe Orr, Kristine E. Orr*, for appellee.