**2020 IL 125441**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125441)

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v. KENT ELMORE *et al.*, Appellees.

*Opinion filed December 3, 2020.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Karmeier, Theis, and Neville concurred in the judgment and opinion.

Justice Kilbride took no part in the decision.

**OPINION**

¶ 1     At issue is the enforceability of a "mechanical device" exclusion in an automobile policy issued by plaintiff, State Farm Mutual Automobile Insurance Company (State Farm). The appellate court held that the exclusion was ambiguous

and therefore construed it against State Farm and in favor of coverage. 2019 IL App (5th) 180038, ¶ 28. For the reasons that follow, we reverse.

¶ 2                                   BACKGROUND

¶ 3        Defendant, Kent Elmore, was injured while unloading grain from a truck owned by his father, defendant Ardith Sheldon Elmore (Sheldon). Sheldon possessed or leased farm property in Effingham County. On October 16, 2013, Kent was assisting Sheldon in his grain farming operation. Kent backed up a grain truck to an auger that was being used to move grain from the grain truck to a transport truck. A tractor powered the auger by means of a power take-off (PTO) shaft. The auger had a hopper that received grain from the grain truck. The hopper was located beneath the grain truck's dumping chute. As the auger turned, it moved grain up and dumped it into the transport truck. Kent was attempting to open the grain truck's gate to let grain into the auger. He wanted to get extra leverage, so he stepped onto the auger. Because the auger's protective shield had been removed, Kent's foot was exposed to the turning shaft. In the accident, Kent lost his right leg below the knee. Surgery was later required to amputate the leg just above the knee.

¶ 4        Kent filed a negligence action against Sheldon. He eventually settled the lawsuit. In exchange for releasing all claims against Sheldon, Kent received $1.9 million from Bishop Mutual Insurance Company, Grinnell Mutual, and State Farm Fire and Casualty. Kent reserved his right to pursue additional coverage under the auto policy that covered the grain truck.

¶ 5        The truck, a 2002 Ford International 4900, was covered by an auto policy in which Sheldon was a named insured. State Farm filed a complaint for declaratory judgment asking the court to determine and adjudicate the parties' rights and liabilities under the policy. In its original complaint, State Farm argued that no coverage was provided because the injury was caused by an auger and because an auger is neither a "car" nor a "trailer," as those terms are defined in the policy. State Farm later filed an amended complaint arguing that the auger was a mechanical device and therefore coverage was precluded under the policy's "mechanical device" exclusion.

¶ 6    State Farm attached a copy of the policy to the complaint. The policy's declarations page lists the insured vehicle as a 2002 International Model 4900 truck. The policy provided bodily injury liability limits of $250,000 per person and $500,000 per accident. The policy sets forth its liability coverage as follows:

"LIABILITY COVERAGE

\*\*\*

Additional Definition

*Insured* means:

1. *you* and *resident relatives* for:

a. the ownership, maintenance, or use of:

(1) *your car*;

\* \* \*

3. any other *person* for his or her use of:

a. *your car*:

\* \* \*

Such vehicle must be used within the scope of *your* consent;

\* \* \*

Insuring Agreement

1. *We* will pay:

a. damages an *insured* becomes legally liable to pay because of:

(1) *bodily injury* to others; and

(2) damage to property

caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy[.]" (Emphases in original.)

¶ 7  The policy contains a Commercial Vehicle endorsement. The "mechanical device" exclusion is contained in this endorsement. This exclusion provides as follows:

"LIABILITY COVERAGE

* * *

b. Exclusions

* * *

(4) THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES RESULTING FROM:

* * *

(c) THE MOVEMENT OF PROPERTY BY MEANS OF A MECHANICAL DEVICE, OTHER THAN A HAND TRUCK, THAT IS NOT ATTACHED TO THE VEHICLE DESCRIBED IN (a) ABOVE." (Emphasis in original.)

¶ 8  State Farm moved for summary judgment. In the motion, State Farm argued that the grain auger was a "mechanical device" as that term is used in the policy and that therefore the policy provided no liability coverage to Sheldon for Kent's claims. In a memorandum attached to the motion, State Farm argued that the "mechanical device" exclusion precluded coverage because Kent was injured when he stepped into the turning auger. State Farm contended that the exclusion clearly applied because the auger was a mechanical device other than a hand truck, it was not attached to the vehicle, and it was being used to move grain. State Farm noted that, although no Illinois case had construed the exclusion, courts in other states had found the exclusion valid and enforceable.

¶ 9       Kent later filed his own motion for summary judgment. Kent cited section 7-317(b)(2) of the Illinois Vehicle Code, which provides that an owner's policy of liability insurance "[s]hall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured." 625 ILCS 5/7-317(b)(2) (West 2012). Kent argued that Sheldon both used and was responsible for the use of the insured vehicle at the time of the accident because "use" includes the loading, unloading, and transferring of corn from the field to the grain elevator. Kent noted that Illinois courts have adopted the "completed operations doctrine," which provides that coverage extends to the insured for all acts that occur before the loading and unloading process has been completed. In a memorandum of law attached to the motion, Kent argued that several other states had held the "mechanical device" exclusion void as against public policy when it conflicted with a mandatory omnibus coverage statute.

¶ 10      Following a hearing, the circuit court granted State Farm's motion for summary judgment and denied Kent's motion. In a written order, the circuit court explained that it agreed with Kent that the vehicle was being used at the time of the accident, that the use bore a causal connection to the injury, and that the unloading of grain was completing a task. The court agreed with State Farm, however, that the auger was a mechanical device and that it was not a hand truck. The court found the exclusion unambiguous and applicable to Kent's injury. The court considered the out-of-state cases cited by Kent that had held the exclusion void as against public policy. However, the court found these cases inapplicable because the rule in Illinois is that insurers may have reasonable exclusions in a policy if the exclusions do not differentiate between the named insured and permissive users. See *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121 (2005). The court found that the "mechanical device" exclusion did not differentiate between the insured and permissive users and therefore did not run afoul of *Progressive*. Finding the exclusion unambiguous and not against public policy, the court denied Kent's motion for summary judgment and entered summary judgment for State Farm.

¶ 11      Kent appealed, and the Appellate Court, Fifth District, reversed. 2019 IL App (5th) 180038. Kent raised two issues on appeal. Kent argued that the "mechanical device" exclusion was (1) ambiguous and therefore had to be construed in favor of

coverage and (2) contrary to the public policy underlying this state's mandatory insurance laws. *Id.* ¶ 16. The appellate court agreed with his first point and accordingly did not address the public policy argument.

¶ 12　　　　The appellate court acknowledged that other states had construed the "mechanical device" exclusion and found it unambiguous and enforceable. *Id.* ¶ 22 (citing *Continental Insurance Co. v. American Motorist Insurance Co.*, 542 S.E.2d 607 (Ga. Ct. App. 2000) (applying exclusion when injury was caused by a pallet jack with a hydraulic pumping mechanism), *Elk Run Coal Co. v. Canopius U.S. Insurance, Inc.*, 775 S.E.2d 65 (W. Va. 2015) (front end loader was a "mechanical device"), and *Dauthier v. Pointe Coupee Wood Treating, Inc.*, 560 So. 2d 556 (La. Ct. App. 1990) (forklift was a "mechanical device")). The three courts reached their conclusions in different ways. In *Continental*, the court noted that the exclusion applies to the movement of property by a mechanical device other than a hand truck. *Continental*, 542 S.E.2d at 609-10. The court focused its analysis on whether a pallet jack was a hand truck. The court concluded that it was not, and therefore the exclusion applied. *Id.* at 611. In *Elk Run*, the court determined that a front-end loader was a mechanical device by looking to other cases that had described front-end loaders that way. See *Elk Run*, 775 S.E.2d at 74. In *Dauthier*, the court determined that a forklift was a mechanical device by looking at the dictionary definitions of "mechanical" and "device." *Dauthier*, 560 So. 2d at 558. *Dauthier* determined that a mechanical device is "an invention or contrivance having to do with machinery or tools." *Id.* State Farm asked the appellate court to adopt *Dauthier*'s definition of "mechanical device." 2019 IL App (5th) 180038, ¶ 22.

¶ 13　　　　The appellate court distinguished the cases State Farm relied upon by noting that they involved "self-powered or motorized machines used in commercial settings." *Id.* ¶ 24. By contrast, the auger was neither motorized nor self-powered but was simply "a large cylindrical structure with metal helical blades." *Id.* It could not move grain unless it was hooked up to an external power source. *Id.* The court was concerned that, under State Farm's "expansive definition" of " 'mechanical device,' " coverage would be provided "only for injuries arising when grain is unloaded from the insured truck by hand or by a hand truck." *Id.* ¶ 25. The court noted that Webster's defined a "hand truck" as " 'a small hand-propelled truck or wheelbarrow.' " *Id.* (quoting Webster's Third International Dictionary 1028 (1978)).

¶ 14    The appellate court next explained that, in determining whether ambiguity exists, courts may consider "the subject matter of the contract, the facts surrounding its execution, the situation of the parties, and the predominate purpose of the contract." *Id.* ¶ 26. Here, the insured truck was to be used for farming purposes. The court believed that State Farm's interpretation of the exclusion would produce an absurd result because it would mean that coverage was provided only for the unloading of grain with a hand truck. *Id.* The court did not believe that this would be a reasonably effective or feasible way to unload grain from a grain truck. *Id.* The court noted that the dispute was not one between insurance companies, and the court did not believe that a purchaser of auto insurance such as Sheldon would have known of the exclusion. *Id.* The court believed that the policy language had to be viewed from the standpoint of "an average lay person who is untrained in complexities of the commercial insurance industry." *Id.* The court was also concerned that State Farm's definition would allow the insurer to decide after an accident occurred whether a particular device was a mechanical device. *Id.* ¶ 27. Accordingly, the court held that the exclusion had not been set forth in clear, unambiguous language but rather was overly broad and vague, leaving an insured unable to discern which devices would be covered by the exclusion. *Id.* ¶ 28. The court thus held that the exclusion had to be construed against the insurer and in favor of coverage. *Id.*

¶ 15    Presiding Justice Overstreet dissented. Applying the plain meaning of the terms "mechanical" and "device," the dissent concluded that an auger is a mechanical device. *Id.* ¶ 33 (Overstreet, P.J., dissenting). The dissent noted other cases that had described an auger as a mechanical device and rejected the majority's conclusion that only motorized or self-powered devices are mechanical. *Id.* The dissent also disagreed with the majority's conclusion that the exclusion was overly broad and vague. The dissent argued that the exclusion's applicability in other factual circumstances did not mean that it was ambiguous as to whether a grain auger is a mechanical device. *Id.* ¶ 34. Finally, the dissent concluded that the majority's interpretation had unduly restricted the parties' freedom to "make their own contracts and exclude certain risks from liability coverage." *Id.* ¶ 35. According to the dissent, the majority's interpretation was contrary to this court's decision in *Progressive*, which allows parties to an insurance contract to exclude certain risks from coverage, as long as the exclusion does not distinguish between insureds and permissive users. *Id.*

¶ 16        This court allowed State Farm's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019).

¶ 17                                ANALYSIS

¶ 18        State Farm argues that the mechanical device exclusion is unambiguous and precludes coverage. State Farm further contends that the appellate court's refusal to enforce the exclusion restricts freedom of contract. Kent counters that the exclusion is vague and ambiguous and therefore the appellate court properly construed it against the insurer. Alternatively, Kent argues that the exclusion is void as against public policy because it excludes coverage for damages for bodily injury suffered by a permissive user.

¶ 19        When the parties file cross-motions for summary judgment, they agree that only questions of law are involved and invite the court to decide the issues based on the record. *Bremer v. City of Rockford*, 2016 IL 119889, ¶ 20. Construction of an insurance policy and whether the policy comports with statutory requirements are questions of law appropriate for summary judgment. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399 (2010). We review summary judgment orders *de novo*. *Id.* at 399-400.

¶ 20                              1. Ambiguity

¶ 21        We first consider State Farm's argument that the appellate court erred in finding the exclusion ambiguous. The rules applicable to contract interpretation govern the interpretation of an insurance policy. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). Our primary objective is to ascertain and give effect to the parties' intentions as expressed in the agreement. *Schultz*, 237 Ill. 2d at 400. Policy terms that are clear and unambiguous will be enforced as written unless doing so would violate public policy. *Id.* The rule that policy provisions limiting an insurer's liability will be construed liberally in favor of coverage applies only if a provision is ambiguous. *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 372 (2007). Ambiguity exists only where the policy language is susceptible to more than one reasonable interpretation. *Founders*, 237 Ill. 2d at 433. This court will not strain to find ambiguity where none exists, nor will it adopt an interpretation that "rests on

- 8 -

'gossamer distinctions' that the average person, for whom the policy is written, cannot be expected to understand." *Id.* (quoting *Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America*, 411 Ill. 325, 334 (1952)). A policy term is not ambiguous because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning. *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 529 (1995). A court may not read an ambiguity into a policy just to find in favor of the insured. *Id.* at 530. If the words of a policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written, and the parties should be bound to the agreement they made. *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 495 (1985).

¶ 22 We agree with State Farm that the appellate court erred in finding the mechanical device exclusion ambiguous. Again, the exclusion provides that there is no coverage for damages resulting from "the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the [insured] vehicle." Giving the terms of the policy their plain, ordinary, and popular meaning shows that the exclusion is capable of only one reasonable interpretation. Moreover, the exclusion is capable of being understood by the average insured. "Mechanical" is defined as "of, relating to, or concerned with machinery or tools" or "produced or operated by a machine or tool." Webster's Third New International Dictionary 1400-01 (1993). A "device" is "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." *Id.* at 618. A "hand truck" is a "small hand-propelled truck or wheelbarrow." *Id.* at 1028. Here, not only was the grain auger clearly a machine or tool designed to move grain from one place to another, it was also a device that was "operated by a machine or tool" (a tractor). Moreover, the auger was not a small hand-propelled truck or wheelbarrow, and it was not attached to the insured vehicle. Thus, the exclusion clearly applied and precluded coverage for Kent's injury.

¶ 23 The appellate court erred in finding the exclusion ambiguous on the basis that the three out-of-state cases cited by State Farm applied the exclusion to devices that were either self-powered or motorized. 2019 IL App (5th) 180038, ¶ 24. There are several problems with this part of the court's analysis. First, the courts in these three cases did not rely on the fact the devices were motorized or self-powered to conclude that they were mechanical devices. See *Continental*, 542 S.E.2d at 609-

11; *Elk Run*, 775 S.E.2d at 74; *Dauthier*, 560 So. 2d at 558. Second, it is settled that, in construing insurance contracts, "courts can have no other function but to ascertain and enforce the intention of the parties, and must not inject terms and conditions different from those agreed upon by the parties." *Lentin v. Continental Assurance Co.*, 412 Ill. 158, 162-63 (1952); see *Chatham Corp. v. Dann Insurance*, 351 Ill. App. 3d 353, 359 (2004). The court erred in reading in a requirement that a mechanical device must be self-powered or motorized. Third, the court mistakenly focused not on the plain meaning of the terms in the exclusion but rather on the facts of other cases that had applied the exclusion. The fact that the devices at issue in those cases happened to be motorized or self-powered says nothing about whether an auger fits the plain meaning of "mechanical device." The appellate court's analysis is akin to a court finding an exclusion applicable to "watercraft" ambiguous as to whether a sailboat is a watercraft because the court discovered three out-of-state cases applying the exclusion to motorboats. Finally, the plain language of the exclusion shows that a "mechanical device" does not have to be self-powered or motorized. The exclusion refers to "*a mechanical device, other than a hand truck*." (Emphasis added.) In other words, the policy itself considers a hand truck to be a mechanical device. If a small hand-propelled truck or wheelbarrow is a mechanical device, then clearly the policy itself does not require a device to be self-powered or motorized to be considered a mechanical device.

¶ 24    Alternatively, Kent argues that, even if a grain auger could be considered a "mechanical device," the exclusion is still ambiguous because it is susceptible to more than one interpretation, one of which would not apply to Kent's use of the truck. Kent argues that the exclusion must be read in context with the two exclusions above it. This section of the policy reads:

> "(4) THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES RESULTING FROM:
>
>     (a) THE HANDLING OF PROPERTY BEFORE IT IS MOVED FROM THE PLACE WHERE IT IS ACCEPTED BY THE *INSURED* FOR MOVEMENT INTO OR ONTO A VEHICLE FOR WHICH THE *INSURED* IS PROVIDED LIABILITY COVERAGE BY THIS POLICY;

(b) THE HANDLING OF PROPERTY AFTER IT IS MOVED FROM THE VEHICLE DESCRIBED IN (a) ABOVE TO THE PLACE WHERE IT IS FINALLY DELIVERD BY THE *INSURED*; OR

(c) THE MOVEMENT OF PROPERTY BY MEANS OF A MECHNICAL DEVICE, OTHER THAN A HAND TRUCK, THAT IS NOT ATTACHED TO THE VEHICLE DESCRIBED IN (a) ABOVE." (Emphases in original.)

Kent notes that the mechanical device exclusion refers to "the vehicle described in (a) above." Kent argues that the vehicle described in subsection (a) is "an insured vehicle which is receiving property into or onto it." Thus, according to Kent, the mechanical device exclusion would apply only when property is being moved *onto* an insured truck. Because Kent's injury occurred when property was being moved off the truck, a reasonable interpretation of the policy is that the mechanical device exclusion does not apply. We disagree.

¶ 25    In referring to the "vehicle described in (a) above," subsection (c) is clearly referring to subsection (a)'s *description* of the vehicle. Subsection (a) describes the vehicle as "a vehicle for which the insured is provided liability coverage by this policy." Rather than repeat that description, subsections (b) and (c) simply refer to the "vehicle described in (a) above." It is not reasonable to interpret the language "the vehicle described in (a) above" as referring to the entirety of subsection (a), as the other portion of subsection (a) does not describe the vehicle but rather describes what type of handling of property is excluded from coverage. Such an interpretation would render subsection (b) nonsensical, as it applies to the handling of property at a completely different time than subsection (a). These are three separate and independent exclusions, separated by the word "or." The first excludes coverage for the handling of property before the insured moves it from the place of acceptance; the second excludes coverage for the handling of property after it is delivered by the insured; and the third excludes coverage for the movement of property by mechanical devices, other than hand trucks, when those devices are not attached to the insured vehicle. We do not agree with Kent that it is reasonable to interpret the mechanical device exclusion as applying only to the loading of property onto the insured vehicle.

¶ 26       Finally, the appellate court agreed with Kent that the "mechanical device" exclusion is ambiguous when considered in light of the entire policy and the risks it was intended to cover. Relying on the policy's declarations page, the appellate court noted that the insured vehicle was intended to be used for farming purposes. 2019 IL App (5th) 180038, ¶ 26. The court did not believe that the parties would have contemplated that using a wheelbarrow would have been a "reasonably feasible or effective method for unloading grain from the large grain truck identified on the declarations page." *Id.*

¶ 27       We note, however, that, although the parties have referred to the insured vehicle as a "grain truck," it is not identified as such in the policy. The declarations page does state at the bottom of the page "USE-FARMING." Nevertheless, the policy on the truck is an automobile policy, not a comprehensive general liability policy or a farm liability policy. The exclusion makes perfect sense when viewed in this context. The policy clearly considers the unloading of property by hand or with a small hand truck or wheelbarrow a covered use of the vehicle. But the nature of the activity and the risk involved changes when heavy machinery or farm implements are being used to move property. See *Hanover Insurance Co. v. Canal Insurance Co.*, No. Civ.A.05 1591 SDW, 2007 WL 1413413, *3 (D.N.J. Apr. 3, 2007) ("The activity of unloading the Tractor using a mechanical device represents a separate risk against which Canal has expressly elected not to insure and for which it has not received a premium."). As State Farm notes, nothing in the automobile policy indicates that it was meant to cover injuries arising from the use of farm implements. Indeed, the policy contains a "Farm Truck" endorsement, and this endorsement adds an exclusion to the liability, medical payments, uninsured, and underinsured coverages that states: "THERE IS NO COVERAGE FOR AN *INSURED* FOR *BODILY INJURY* OR DAMAGE TO PROPERTY ARISING OUT OF THE OPERATION OF ANY FARM IMPLEMENT."[1] (Emphases in original.) We agree with State Farm that insuring the risk of such devices was not the intention of the auto policy.

---

[1]State Farm did not rely on this exclusion in the trial court. In this court, State Farm mentions it in support of its argument that this automobile policy clearly was not intended to insure the risk of injury arising from the operation of farm implements.

¶ 28                                    2. Public Policy

¶ 29        Kent also argues that the mechanical device exclusion is void as against public
policy. Kent cites cases from other jurisdictions that have found the mechanical
device exclusion void because it conflicted with mandatory insurance statutes. See
*Gulf Underwriters Insurance Co. v. Great West Casualty Co.*, 278 Fed. App'x 454,
459 (5th Cir. 2008); *Parkway Iron & Metal Co. v. New Jersey Manufacturers
Insurance Co.*, 629 A.2d 1352, 1354 (N.J. Super. Ct. App. Div. 1993); *Truck
Insurance Exchange v. Home Insurance Co.*, 841 P.2d 354, 358 (Colo. App. 1992).
Nevertheless, Kent concedes that this court held in *Progressive* that this state's
mandatory insurance laws do not preclude parties from excluding certain risks from
liability coverage. See *Progressive*, 215 Ill. 2d at 136. Rather, exclusions are
permissible so long as they do not differentiate between named insureds and
permissive users. *Id.* at 137-38. In *Progressive*, this court upheld a food delivery
exclusion because it did not differentiate between insureds and permissive users.
*Id.* at 134.

¶ 30        Kent argues, however, that the mechanical device exclusion runs afoul of the
rule established in *Progressive* because it differentiates between insureds and
permissive users. Kent contends that "it is reasonable to conclude that the import
of the 'mechanical device' exclusion is to actually prohibit liability coverage for
injuries sustained by a permissive user in the loading or unloading process of an
insured vehicle." Kent appears to concede that the exclusion does not on its face
differentiate between insureds and permissive users but argues that the "goal" of
the exclusion is to deny coverage to permissive users.

¶ 31        It is difficult to follow Kent's reasoning here. On its face, the exclusion does
not discriminate between insureds and permissive users. When asked at oral
argument to clarify his position on this, Kent's counsel replied, "I think that's really
more of a side, collateral issue, not necessarily on point with regard to whether or
not this policy exclusion is clear or not." He then conceded that the distinction
between insureds and permissive users is not "right on point with regard to this
case" but argued that it highlights the care that courts take in ensuring that
policyholders receive the benefit of what they bargained for. We disagree. The
exclusion simply does not discriminate between insureds and permissive users.
Accordingly, we reject Kent's argument that the exclusion is void as against public

policy.

¶ 32 CONCLUSION

¶ 33 For all the above reasons, we disagree with the appellate court's conclusion that the "mechanical device" exclusion is ambiguous. We further reject Kent's alternative argument that the exclusion is void as against public policy. We therefore reverse the appellate court's decision, which reversed the summary judgment for State Farm and entered summary judgment for defendants. We affirm the circuit court's entry of summary judgment for State Farm.

¶ 34 Appellate court judgment reversed.

¶ 35 Circuit court judgment affirmed.

¶ 36 JUSTICE KILBRIDE took no part in the consideration or decision of this case.