Filed 12/29/23  Wilen v. The Churchill Condominium Assn. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SETH WILEN et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>THE CHURCHILL CONDOMINIUM ASSOCIATION,<br><br>Defendant and Respondent. | B321696<br><br>(Los Angeles County Super. Ct. No. 21SMCV00665)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

It is ordered that the opinion filed on December 1, 2023, be modified as follows:

Add the following new footnote 19 at the end of the carryover paragraph that ends on line 2 of page 24:

> In a petition for rehearing, plaintiffs rely on Civil Code section 4739, a statute that took effect months before plaintiffs filed their reply brief.  Plaintiffs did not cite the statute in their reply brief or in a

California Rules of Court, rule 8.254 notice, nor did they request to file a supplemental brief. Instead, plaintiffs mentioned Civil Code section 4739 for the first time at oral argument. The point is forfeited. (See, e.g., *People v. Carrasco* (2014) 59 Cal.4th 924, 990; *Palp, Inc. v. Williamsburg National Ins. Co.* (2011) 200 Cal.App.4th 282, 291.)

The addition of new footnote 19 will require renumbering existing footnote 19 as footnote 20.

The petition for rehearing is denied. There is no change in judgment.

_____

BAKER, J.    RUBIN, P. J.    MOOR, J.

Filed 12/1/23 Wilen v. The Churchill Condominium Assn. CA2/5 (unmodified opinion)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SETH WILEN et al., | B321696 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21SMCV00665) |
| v. | |
| THE CHURCHILL CONDOMINIUM ASSOCIATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge. Vacated and remanded with directions.

Lubin Pham & Caplin, Namson M. Pham, and JC Chimoures for Plaintiffs and Appellants.

Kulik Gottesman Siegel & Ware, Leonard Siegel, and Justin Nash for Defendant and Respondent.

Plaintiffs Seth Wilen (Wilen) and Emily Stewart (Stewart) are trustees of the Wilen Family Trust (the Trust),[1] which holds title to several guest rooms in a condominium complex. When the homeowners' association, The Churchill Condominium Association (the Association), told plaintiffs they could not rent out the guest rooms and also restricted guest room occupants' use of the complex's amenities, plaintiffs commenced this action and moved for a preliminary injunction. In this appeal from the trial court's denial of that motion, we are principally asked to decide whether the challenged rental and amenity restrictions are consistent with state law and the Association's governing documents. We also consider whether there is an actual controversy concerning another rule that prohibits children under 13 from living in the complex.

## I. BACKGROUND

Plaintiffs own real property in a condominium complex known as The Churchill, located at 10450 Wilshire Boulevard in Los Angeles. A certificate of occupancy for the 13-story building, originally an apartment complex, was issued in 1962. The building was converted from apartments to condominiums in 1976. As described in the covenants, conditions, and restrictions (CC&Rs), the building includes 129 numbered units, six of which are "maid's room[s] and/or guest room[s]."[2]

The complex includes various common areas and amenities. Among other things, it features a gym, pool, sauna, laundry

[1] For simplicity, we refer to Wilen, Stewart, and the Trust collectively as "plaintiffs."

[2] We will call these rooms "guest rooms" for short.

room, mailroom, and social room. In addition to a mailroom, the complex offers a "package acceptance service," which entails signing for packages and holding them in storage until picked up.

Plaintiffs own five units in the building: a 2,204 square foot unit in which they live and four guest rooms ranging from 225 square feet to 297 square feet.[3] As stated by Wilen, plaintiffs "purchased [the guest rooms] to house household staff and provide them with quality of life," but they also "planned to rent out any extra [guest rooms they] had purchased."

This appeal arises primarily from a dispute as to whether plaintiffs may rent out their guest rooms and whether the occupants of guest rooms may use complex amenities. The Association contends its governing documents prohibit owners from renting out guest rooms and require occupants of such rooms to be accompanied by homeowners when using common area amenities. Plaintiffs contend no such rules appear in the governing documents and further assert that any prohibition against renting guest rooms would be void under state law. We shall discuss the parties' positions in more detail after summarizing relevant provisions of the governing documents and state law.

---

[3] These facts are stated in Wilen's declaration in support of plaintiffs' motion for preliminary injunction. Although the Association asserted, in its opposition to the motion, that Wilen and his family lease the 2,200 square foot unit to a tenant and suggests, in its respondent's brief, that plaintiffs own five (not four) guest rooms, neither statement is accompanied by a record citation.

3

*A.    Overview of Governing Documents*

Plaintiffs' rights with respect to the guest rooms are set forth in the CC&Rs[4] and Operating Rules[5] adopted by the Association pursuant to its authority under the CC&Rs.[6] (As we will later discuss, however, Civil Code section 4741 provides a condominium owner shall not be subject to a provision in a governing document that prohibits or unreasonably restricts the rental or lease of separate interests, accessory dwelling units, or junior accessory dwelling units in a condominium development.) Regulations relevant to guest room rentals are primarily found in the CC&Rs while regulations relevant to amenities are primarily found in the Operating Rules.

*1.    Provisions relevant to guest room rentals*

The CC&Rs define several terms fundamental to our analysis.  Among other things, the manner in which

---

[4]    The CC&Rs were first recorded in 1976, amended in 1977, and amended again in 1998.

[5]    Plaintiffs attached Operating Rules adopted in July 2017 to their complaint and submitted Operating Rules adopted in March 2020 in support of their motion for preliminary injunction. Because neither party argues the July 2017 Operating Rules govern this dispute, we discuss only the March 2020 Operating Rules.

[6]    Section 5.1(1) of the CC&Rs empowers the Association "[t]o conduct, manage and control the affairs of the project and to promulgate such additional reasonable house rules and regulations therefor, and to modify and/or amend" the initial rules attached to the CC&Rs.  In the event of a conflict between the CC&Rs and the Operating Rules, the CC&Rs "shall prevail."

4

condominium, unit, and guest rooms are defined help answer whether a guest room should be considered part of a condominium.

The CC&Rs define a condominium as "an estate in real property, consisting of an undivided percentage interest in common in that portion of the real property made subject to [the CC&Rs], and which portion is herein defined or designated as 'Common Area,' together with a separate fee interest in space in the building on such real property, together with such other separate interests in other portions of said real property, as are granted by [the condominium developer]." A "unit" is defined to mean "the elements of a condominium which are not owned in common with the owners of other condominiums in the project." Guest rooms are "any of those elements of a condominium, as more particularly shown on the Condominium Plan . . . as Units 1 to 6 inclusive."

The definition of guest rooms states that these rooms cannot be purchased "without the concurrent ownership and/or transfer of one or more residential units, i.e.[,] 7 to 129 inclusive." The CC&Rs explain that "[t]he purpose of this provision is to assure that only an owner of Units 7 to 129 inclusive may own a [guest room] . . . ."

Subject to various sections prohibiting short-term rentals, the CC&Rs provide that an owner is "free to sell or lease [their] condominium." All leases are required, however, to include an addendum providing, among other things, that "the property leased includes the entire Unit . . . ." "Upon the leasing of [their] Unit, each Member automatically assigns to the lessee the Member's right to use the Common Area recreational and

5

community facilities.  The Member may not exercise those rights until he or she re-takes possession of the Unit."

The Operating Rules grant the Association broad discretion to review proposed leases.  Operating Rule 5.7 requires owners to submit a copy of the executed lease and information regarding the proposed tenant to the Association, which "may approve or reject a lease and/or lessee for any reason whatsoever as it deems to be appropriate."

2.      *Provisions relevant to the use of building amenities by occupants of guest rooms*

The Operating Rules restrict access to certain amenities by reference to defined terms: "homeowner," "tenant," "guest," "resident," and "visitor."  As pertinent here, a homeowner is a person or entity in whom "title to a Condominium is vested."  A tenant is "a person who is identified on a lease as the lessee of a Unit."[7]  A guest is "a person other than a family member who is provided long-term residency in a Unit by the Homeowner or Tenant and who is registered as such with the Office in writing."  A resident is "a person (e.g., family member or Guest) who is provided residency in a Unit by the Homeowner or Tenant, including the Homeowner and Tenant."  And a visitor is "a Visitor of a Homeowner or Tenant who is not registered as a Guest with the Office."

The Operating Rules restrict use of the sauna and gym to "Residents and Guests."  The pool is open to guests and visitors,

---

[7]      The Operating Rules include their own definition of "Unit": "'Unit' means the element of a Condominium which is not owned in common with other Owners of other Condominiums."

6

but only two per unit at any given time.  Although there is no rule expressly limiting use of the mailroom, the building's package acceptance service[8] is only available to registered residents.  The CC&Rs provide that "[t]he owner of each residential unit" is entitled to a storage space to be used only by the owner or a lessee, and the Operating Rules elaborate that "[e]ach Unit (excluding [guest] rooms) is entitled to one tall storage locker or both an upper and lower storage locker."[9]

The parking rules are more complicated.  Although the CC&Rs provide that "[t]he owner of each residence shall be entitled to attendant (valet) parking of not more than [two] passenger vehicles" belonging to the owner or a tenant, the Operating Rules note "only 156 parking spaces actually exist." "In order to optimize this limited number of spaces," the Operating Rules provide, among other things, that assigned spaces are generally only available to homeowners and tenants, but guest parking may be granted on a discretionary basis and visitor parking is available "on a first-come, first-served basis." Additionally, "[m]aids and other employees may be granted

---

[8]    As described in the Operating Rules, "[i]f you are not home or out of town and you are expecting a package via UPS, FedEx, Mail service or any other carrier, we will accept it and hold it for you for a 48 hour period in the package storage room, with your prior written approval."

[9]    The rules concerning the laundry room refer to "Residents," but they do so in a manner that is not clearly intended to exclude other users: "Residents must time the washing and drying cycles and promptly remove all clothes from the machines once the cycle has completed."

7

parking privileges only if they are living on-premises and are registered with the Business Office."

### 3. *Prohibition of permanent residents under 13 years of age*

Although the Association concedes the rule is "outdated" and "unenforceable," the CC&Rs provide that "[n]o children under the age of thirteen (13) may permanently reside in any unit." Under the CC&Rs, child visitors "may temporarily reside or visit in any unit for a continuous period not in excess of two (2) weeks during any six (6) month period."

### B. *Plaintiffs' Lawsuit and Request for a Preliminary Injunction*

In April 2021, plaintiffs filed a declaratory relief action against the Association challenging the ban on guest room rentals, the restrictions on guest room occupants' use of condominium amenities, and the prohibition of child residents.[10] Soon after filing suit, plaintiffs moved for a preliminary injunction that would bar the Association from enforcing these rules.

With respect to guest room rentals, plaintiffs argued the Association has no authority to prohibit renting those rooms because the CC&Rs and the Operating Rules do not expressly prohibit renting. In fact, plaintiffs believed the CC&Rs' provision

---

[10] Plaintiffs' complaint alleges causes of action for declaratory relief, breach of the governing documents and enforcement of equitable servitudes, breach of the duty of good faith and fair dealing, and breach of fiduciary duty.

8

stating "each owner is free to sell or lease [their] condominium" expressly authorizes them to lease their guest rooms. In the alternative—assuming the governing documents do prohibit guest room rentals—plaintiffs argued that such a rule would violate Civil Code section 4741.[11] Regarding building amenities, plaintiffs argued the governing documents do not in fact restrict guest room occupants' access to most of the amenities and any such restriction would be unfair because the condominium assessments charged for guest rooms are calculated based on the same formula used to charge assessments for other units.[12] Plaintiffs argued the restriction against permanent residents under 13 years of age is unenforceable because it is both unreasonable and contrary to public policy.

The Association opposed the request for a preliminary injunction. A declaration from the president of its board of directors, Soheila Aghel (Aghel), asserted that the Association's "position has been that owners of the [guest rooms] are not permitted to lease [them] to tenants." The Association argued it was "within its authority to adopt such a rule" because it did "not contradict the governing documents." The Association further argued section 4741 does not preclude its position on rentals

---

[11]    Undesignated statutory references that follow are to the Civil Code.

[12]    Plaintiffs did acknowledge the CC&Rs impose some limitations on amenity use and accordingly proposed that an injunction simply bar the Association "from restricting [guest room occupants] from using Common Area amenities not specifically afforded to owners of 'Residences' or 'Dwelling Units,' as defined by the [CC&Rs]."

9

because such rooms are only a portion of a condominium, not a full condominium unit the owners would be entitled to lease. The Association submitted a declaration by a planning and land use expert, Bill Christopher (Christopher), averring that, among other things, guest rooms "do not constitute dwelling units, and renting them [would be] a violation of the Los Angeles Municipal Code, the tract conditions set forth by the City of Los Angeles, . . . the Association's CC&Rs, and the Condominium Plan."

Regarding amenities, the Association argued nothing in the governing documents grants guest room occupants full access to building amenities and the Association is entitled to require them to be "accompanied by the homeowner." The Association additionally argued plaintiffs "fail[ed] to identify or specify which purported common area amenities [guest room tenants] should be entitled to use." As to children under 13, the Association stated it "has never sought to enforce" the prohibition against child residents and characterized plaintiffs' request to enjoin enforcement of the rule as "a red herring inasmuch as the central issue in this matter is whether the [guest] [r]ooms are rentable . . . ."

In their reply, plaintiffs argued that regardless of whether the Association has the authority to bar them from renting guest rooms, the Association had not adopted a written rule to that effect.[13] Plaintiffs also challenged the Association's authority to adopt such a rule under section 4741 and argued the guest rooms qualify as "separate interests" governed by the statute because,

---

[13]     Plaintiffs also filed 110 pages of objections to the Aghel and Christopher declarations.

10

pursuant to a related statute, anything not a common area is a separate interest. Plaintiffs argued Christopher's opinion that guest rooms are not dwelling units is irrelevant because guest rooms qualify as light housekeeping units under local ordinances.

### C. *The Trial Court Declines to Enter a Preliminary Injunction*

The trial court denied plaintiffs' motion for preliminary injunction based on its finding that they did not demonstrate they were likely to succeed on the merits of their claims against the Association.

The trial court was not persuaded by plaintiffs' contention that the CC&Rs' provision stating an owner "is free to . . . lease [their] condominium" means an owner may rent out a guest room by itself. The trial court emphasized the CC&Rs define guest rooms to be "elements" of a condominium and determined that a guest room does not qualify as a "condominium" to be leased in its own right. Extending this reasoning, the court found section 4741 does not prohibit the Association from barring such rentals because guest rooms "are not separate interests that can be independently rented . . . ." The trial court also emphasized that renting a guest room separately from the condominium of which it is an element would "run afoul of the City of Los Angeles tract approval conditions," which capped the number of "approved dwelling units" in the building.

The trial court determined the Association could restrict guest room occupants' access to building amenities because they are guests rather than residents under the governing documents. As to the prohibition on child residents, the trial court determined plaintiffs had not demonstrated a likelihood of

11

success on their claim for declaratory relief because the lack of any threat of enforcement meant there is no actual controversy. The trial court further reasoned it is "not clear" that plaintiffs have standing to pursue their challenge to the rule as a violation of the Unruh Civil Rights Act (§ 51 et seq.) because "the harm would presumably be suffered by [plaintiffs'] future, as yet undetermined, tenants, not [p]laintiffs in their capacity as a landlord."

Having concluded plaintiffs "are unlikely to succeed on the merits of their claims," the trial court determined it could deny the request for a preliminary injunction without need to "consider the relative harms the parties will suffer in the interim."[14]

## II. DISCUSSION

We hold the trial court's ruling on plaintiffs' preliminary injunction motion was partially correct.

The court was right that plaintiffs have not shown any likelihood of success on their claim that they should be permitted to lease guest rooms. Plaintiffs' suggestion that the CC&Rs authorize guest room rentals because they authorize *condominium* rentals fails to address the relationship between guest rooms and condominiums in the CC&Rs: although there is no specific rule against guest room rentals, the governing documents make clear that owners may not rent out only part of their separate interest—and a guest room is only part of that

---

[14] The trial court overruled all of plaintiffs' objections to the Aghel and Christopher declarations. We do not further discuss the objections and the trial court's ruling on them because neither affect our analysis of the issues on appeal or the balance of harms to be considered on remand.

separate interest that does not qualify as an additional dwelling unit under section 4741. The trial court was also correct that there is no actual controversy regarding the CC&Rs' prohibition of child residents in light of the Association's non-enforcement concessions (plaintiffs' contention that the Association's refusal to enforce the provision exposes it to liability is baseless).

Plaintiffs' arguments regarding guest room occupant access to building amenities are a different story, however. There, plaintiffs did make a showing that they are likely to succeed on the merits because nothing in the governing documents suggests guest room occupants do not qualify (at least) as guests and the Operating Rules provide for guest access to various amenities with no requirement that an owner be present. Because the trial court's order rested entirely on the erroneous conclusion that plaintiffs failed to demonstrate a likelihood of success on the merits, we shall remand for the court to consider, in the first instance, the balance of interim harms as to that element of the requested injunction.

### A. *Preliminary Injunction Standards*

"In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his [or her] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction. On appeal, questions underlying the preliminary injunction are reviewed under the appropriate standard of review. Thus, for example, issues of fact are subject to review under the substantial evidence standard; issues of pure law are subject to independent review." (*People ex*

13

*rel. Feuer v. Nestdrop, LLC* (2016) 245 Cal.App.4th 664, 672 [cleaned up].)  When consideration of a single preliminary injunction factor is the basis for a trial court's ruling and is found on appeal to be erroneous, it is "[n]ormally . . . appropriate to remand the case to the trial court for consideration [of the other factor]."  (*King v. Meese* (1987) 43 Cal.3d 1217, 1228.)

> B.  *Plaintiffs Are Not Likely to Prevail on Their Guest Room Rental Claim Because the CC&Rs and Operating Rules Prohibit Rentals*
> 1.  *Likelihood of success under the governing documents*

Plaintiffs contend the governing documents (1) expressly authorize or (2) at least do not prohibit guest room rentals.  The first position rests on their reading of section 25.1 of the CC&Rs, which provides that an owner is "free to sell or lease [their] condominium . . . ."  The correctness of that view accordingly depends on whether a guest room is a "condominium" for purposes of the CC&Rs.

Section 1.3 of the CC&Rs defines guest rooms to be "elements" of a "condominium."  Together with this section's provision that a guest room cannot be purchased "without the concurrent ownership and/or transfer of one or more" residential units, the clear import of this definition is that a guest room is not a condominium in its own right.  Rather, it is only part of the owner's separate interest, and thus, not a condominium as defined in the CC&Rs.

Plaintiffs alternatively argue that the Association has no authority to enforce a ban on guest room rentals that is not expressly prohibited in the governing documents.  (§ 1468, subd.

14

(d) [restrictive covenants must be recorded]; § 4350, subd. (a) [operating rules for common interest development must be in writing].) We assume for the sake of argument that Operating Rule 5.7's provision that the Association "may approve or reject a lease and/or lessee for any reason whatsoever as it deems to be appropriate" requires the Association to consider every application in good faith and does not authorize an unwritten, categorical ban on guest room rentals. Nonetheless, other provisions of the CC&Rs do sufficiently evidence a ban on guest room rentals.

We read the express authorization of the lease of an entire condominium as a prohibition against the lease of anything less. (*White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881, fn. 4 [the ""familiar maxim"" of expressio unius est exclusio alterius (mention of one thing is exclusion of another) applies in contract interpretation].) Moreover, several provisions of Article XXVI of the CC&Rs, entitled "LEASING OF A UNIT," support the inference that a lease must include an entire condominium.

Section 26.4 requires every lease to include an addendum stating, among other things, that "the property leased includes the entire Unit . . . ." As we have already mentioned, "unit" is defined in the CC&Rs to mean "the elements of a condominium which are not owned in common with the owners of other condominiums in the project." This definition does not suggest that a unit is any *one* of the elements of a condominium which are not owned in common with others—rather, the unit (singular) is the sum of its elements (plural).[15] The upshot of this is that

---

[15] The slightly different definition of "unit" set forth in the Operating Rules does not apply to the CC&Rs, but to the extent that it sheds any light on the meaning of the CC&Rs, it does not

15

every lease must expressly provide that the property leased includes all of the owner's separate interest. And because the CC&Rs prohibit anyone from owning only a guest room, this necessarily means that a guest room cannot be rented out on its own.

Other provisions of Article XXVI support this conclusion. For example, section 26.3 provides that "[n]o Member may lease *his or her Unit* for an initial term of less than one (1) year. . . ." (Emphasis added.) Similarly, section 26.5 provides that an owner "who leases *his or her Unit* agrees to indemnify, defend, and hold harmless [the Association] . . . from all claims which may arise from the acts or omissions of his or her lessee." (Emphasis added.) The same understanding is also reflected in section 26.6, which provides that, "[u]pon the leasing of his or her Unit, each Member automatically assigns to the lessee the Member's right to use the Common Area recreational and community facilities" and "[t]he Member may not exercise those rights until he or she re-takes possession of the Unit." While plaintiffs contend this section should be construed to mean that a right to use building amenities attaches to guest rooms, that reading does not give effect to the clause restricting use by the lessor during the term of

---

undermine this construction. To reiterate, the Operating Rules define "unit" to mean "the element of a Condominium which is not owned in common with other Owners of other Condominiums." The two definitions use the undefined term, "element," in different senses. In the CC&Rs, elements are the constituent parts of a unit, which equates to the owner's separate interest; in the Operating Rules, the unit is the separate interest element of condominium ownership. In either case, "unit" refers to the entirety of the owner's separate interest.

16

the lease. The fact that the owner cannot use building amenities at all until they re-take possession of a rented unit means the owner of a guest room cannot lease it independently of the rest of their separate interest.[16]

We acknowledge the CC&Rs nominally refer to guest rooms as "units" when designating them as "Units 1 to 6." But naming conventions aren't everything. Indeed, if they were, the often used alternative appellation (maid's rooms) would undermine any assertion that such rooms can be leased to paying tenants. We also acknowledge there appear to be instances where the CC&Rs do use the term "unit" to refer to something less than all of an owner's separate interest. For example, in allocating voting shares, Article V provides that "Class A members shall be entitled to one vote for each unit (excluding [m]aid's [r]ooms) which is subject to assessment . . . ." For the reasons we have already discussed, however, the parenthetical exception must be read simply to underscore that a guest room is not a unit in its own right.

Because the CC&Rs are properly read to prohibit guest room rentals, we need not address the Association's alternative contention that guest room rentals would violate conditions set

---

[16] Insofar as plaintiffs would challenge this rationale by hypothesizing someone who owns two or more condominiums and is presumably able to continue enjoying the building's amenities if they rent out only one, the challenge is unpersuasive. Ownership of a condominium is a prerequisite for ownership of a guest room, but ownership of a condominium is not a prerequisite for ownership of any other condominium. In other words, the CC&Rs assume that a guest room will necessarily be owned as part of a condominium.

forth by the City of Los Angeles when it approved the building's conversion to condominiums.

### 2. *Likelihood of success under section 4741*

Common interest developments—a category that includes condominium projects[17]—are defined and regulated under the Davis-Stirling Common Interest Development Act (the Davis-Stirling Act). (§ 4000 et seq.) Plaintiffs' arguments in this appeal center on section 4741, subdivision (a)'s regulation of rules restricting rentals in common interest developments. The statute provides: "An owner of a separate interest in a common interest development shall not be subject to a provision in a governing document or an amendment to a governing document that prohibits, has the effect of prohibiting, or unreasonably restricts the rental or leasing of any of the separate interests, accessory dwelling units [ADUs], or junior accessory dwelling units [JADUs] in that common interest development to a renter, lessee, or tenant." A summary of earlier legislative action is helpful to understanding the purpose and scope of this provision.

Legislative efforts to codify a right to rent out housing in common interest developments began with Senate Bill No. 150 (2011-2012 Reg. Sess.) (SB 150), which created former section 1360.2. That statute stated "[a]n owner of a separate interest in a common interest development shall not be subject to a provision in a governing document or an amendment to a governing

---

[17]    Section 4100 defines "[c]ommon interest development" to include "(a) [a] community apartment project[; ¶] (b) [a] condominium project[; ¶] (c) [a] planned development[; ¶ and] (d) [a] stock cooperative."

18

document that prohibits the rental or leasing of any of the separate interests in that common interest development to a renter, lessee, or tenant unless that governing document, or amendment thereto, was effective prior to the date the owner acquired title to his or her separate interest." (Stats. 2011, ch. 62, § 2, subd. (a).) This restriction applied only to rules that became effective on or after January 1, 2012, (Stats. 2011, ch. 62, § 2, subd. (f)) and owners remained free to consent to new restrictions on their right to rent their property (Stats. 2011, ch. 62, § 2, subd. (b)).

Legislative analyses of SB 150 emphasized owners' need for flexibility during a period of widespread financial hardship and depressed property values. (See, e.g., Assem. Housing & Community Development Com., Analysis of SB 150 as amended June 9, 2011, 3 ["Many people need to rent their units because of job relocation or a personal situation. The ability to rent a unit has become even more important because of the deteriorating housing market"]; Sen. Judiciary Com., Analysis of SB 150 as amended April 25, 2011, 4 ["For those homeowners who are facing difficult economic times, renting their home and moving in with a family member is one practical way to generate additional income to pay the mortgage and avoid a foreclosure"].)

The Legislature expanded its regulation of restrictions on rentals in common interest developments with Assembly Bill No. 3182 (2019-2020 Reg. Sess.) (AB 3182). Effective January 1, 2021, AB 3182 removed former section 1360.2's exceptions for rules to which owners consented and for those adopted prior to January 1, 2012. (Former section 1360.2, subdivision (a) is now codified, with a non-substantive amendment, at section 4740, subdivision (a).) AB 3182 also added section 4741.

19

In contrast to SB 150, the legislative history of AB 3182 focuses less on the need to protect homeowners experiencing financial hardship and more on the need to expand the state's housing supply. As stated by the bill's author, "We must marshal all available resources to address the housing and homelessness crisis. There are millions of homes across the state that have the potential to be rented to Californians in need of housing but are prohibited from being leased under outdated HOA rules. AB 3182 prohibits rental bans in HOAs to allow homeowners who want to, [to] rent out their homes." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of AB 3182 as amended July 27, 2020, 3.) The bill's sponsor, California YIMBY, argued "that HOA prohibitions against tenants act as a prohibition against the production of important types of housing needed to solve California's housing crisis because if that housing cannot be occupied by a tenant, it is unlikely in many cases to be built." (*Id.* at 5.)

For purposes of this appeal, we do not need to untangle the overlapping provisions of section 4740, subdivision (a) and section 4741, subdivision (a).[18] It is necessary, however, to discuss some of section 4741's other subdivisions. Section 4741, subdivision (b) provides that a common interest development may *cap* the

---

[18] As one treatise remarks, "[i]t would appear that the result of the adoption of Civil Code section 4741 has led to a confusing situation. As we read this section along with Civil Code section 4740, as amended, there could be [several] classes of owners in a project that are subject to different rental restrictions, at least for a period of time . . . ." (Hanna & Van Atta, Cal. Common Interest Developments: Law and Practice (2023) § 22:15.) Plaintiffs' arguments in this case focus solely on section 4741.

20

number of separate interests that may be rented at "25 percent of the separate interests."  But other subdivisions exempt certain owners from this cap.  Subdivision (d) exempts ADUs and JADUs from this cap by specifying that, "[f]or purposes of this section, an [ADU] or [JADU] shall not be construed as a separate interest."  Subdivision (e) exempts owners who occupy either the separate interest or ADU or JADU.  And subdivision (h) exempts owners who acquired title before AB 3182's effective date.

Plaintiffs contend section 4741, subdivision (a) bars any prohibition or unreasonable restriction on the rental of guest rooms.  The dispositive question is whether guest rooms qualify as "separate interests, [ADUs], or [JADUs]" for purposes of the statute.  Plaintiffs do not suggest the guest rooms are ADUs or JADUs, so our discussion focuses on the meaning of "separate interests" for purposes of section 4741.

"Separate interest" is a defined term within the Davis-Stirling Act.  In the context of a condominium project, "'separate interest' means a separately owned unit, as specified in Section 4125."  (§ 4185, subd. (a)(2).)  Section 4125, subdivision (b) provides that "[a] condominium consists of an undivided interest in common in a portion of real property coupled with a separate interest in space called a unit, the boundaries of which are described on a recorded final map, parcel map, or condominium plan in sufficient detail to locate all boundaries thereof. . . ."  Section 4125, subdivision (d) clarifies that "[a]n individual condominium within a condominium project may include, in addition, a separate interest in other portions of the real property."  Section 4095, subdivision (a) defines "common area" to mean "the entire common interest development except the separate interests therein."  By implication, "separate interest"

accordingly means any part of a common interest development except the common area therein.

Plaintiffs contend that because guest rooms are not part of the building's common area, they must be separate interests for purposes of section 4741, subdivision (a), and any prohibition or unreasonable restriction on rentals is therefore void. Although superficially appealing, the argument rests on an unsupported assumption that section 4741, subdivision (a) applies to every non-ADU/JADU portion of an owner's separate interest.

The guest rooms at issue in this case are not *by themselves* separate interests for purposes of section 4741; rather, they are part of a separate interest. Section 4125, subdivision (d) establishes every condominium includes only one separate interest even if the boundaries are not contiguous. An individual condominium may include "a separate interest in other portions of the real property." (§ 4125, subd. (d).) If each of the "other portions of the real property" represented a separate interest in its own right, the statute would specify that an individual condominium may include *separate interests* therein—not "*a* separate interest." Moreover, the proposition that a single condominium is divisible into infinitely many separate interests would clash with section 4741, subdivision (b)'s accommodation of a cap on the percentage "of the separate interests" that may be rented out, which assumes that separate interests are discrete, countable things.

Section 4741, subdivision (a) does not address prohibitions or restrictions on the rental of a portion of a condominium owner's separate interest. First, the plain language of the statute applies to rules concerning the rental or leasing of "any of the separate interests" in a common interest development, not *any*

22

*part of* any of the separate interests in a common interest development. Moreover, it is significant that this language ("any of the separate interests") mirrors that in section 4740, subdivision (a). As we have discussed, legislative analyses of SB 150—the relevant portion of which is now codified at section 4740, subdivision (a)—focused on resident owners' potential need to *vacate* property and rent it out for financial reasons.

Additionally, section 4741, subdivision (a)'s prohibition of "unreasonabl[e]" restrictions on the rental of separate interests must be construed in light of earlier case law that upheld a prohibition on renting part of a separate interest. (*People v. Scott* (2014) 58 Cal.4th 1415, 1424 ["It is a settled principle of statutory construction that the Legislature "'is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof"'"].) Specifically, in *Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, the Court of Appeal considered whether a common interest development's restriction of use to single-family dwelling purposes was "unreasonable" under the Davis-Stirling Act. (*Id.* at 1164, quoting former § 1354, subd. (a), current § 5975, subd. (a) ["'covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development'"].) The Court upheld the restriction and affirmed a judgment enjoining the owner from renting out rooms in his condominium. (*Id.* at 1162, 1170, 1173.)

Because guest rooms are not by themselves separate interests and section 4741, subdivision (a) does not prevent adopting rules against renting out a portion of a separate

23

interest, the CC&Rs' prohibition of guest room rentals is not affected by section 4741, subdivision (a).

> ### C. Plaintiffs Are Not Likely to Succeed on Their Claim Regarding the Prohibition on Child Residents Because There Is No Actual Controversy

Plaintiffs' only claim regarding the CC&Rs' ban on child residents is one for declaratory relief. Declaratory relief under Code of Civil Procedure section 1060 "'requires an actual controversy relating to the legal rights and duties of the respective parties' [citation], not merely ""an abstract or academic dispute."'" [Citation.]" (*TransparentGov Novato v. City of Novato* (2019) 34 Cal.App.5th 140, 148.)

Here, the Association correctly concedes the CC&Rs' ban on child residents is unenforceable. (*O'Connor v. Village Green Owners Assn.* (1983) 33 Cal.3d 790, 792 ["We conclude that the age restriction in the CC&Rs of a condominium development . . . violates the [Unruh A]ct"]; § 51.2, subd. (b) [codifying *O'Connor*].) Nonetheless, plaintiffs suggest there is still an actual controversy because the Association "has a fiduciary duty to enforce an illegal provision." Unsurprisingly, that is not the law. (See, e.g., Rest.2d Agency, § 411 [subject to exceptions not applicable here, "one who undertakes to perform service as the agent of another is not liable for failing to perform such service if, at the time of the undertaking or of performance, such service is illegal"].)

24

*D.  Plaintiffs Are Likely to Succeed on Their Amenity*
    *Claim Because the Association's Restrictions Are*
    *Unsupported by the CC&Rs or the Operating Rules*

Plaintiffs submitted a declaration by Nicole Lupo (Lupo), who lived in a guest room while performing unspecified work in plaintiffs' household.  Lupo declared she moved out because, among other things, the Association told her she "was not allowed to use the [c]ommon [a]rea amenities, including the laundry room, pool, and gym."  In the trial court, however, the Association argued it had never categorically barred guest room occupants from using building amenities, but rather required them to be accompanied by a homeowner.  That position was reflected in a September 2019 email to Wilen advising him that, "per our CC&Rs, guests are not permitted parking spaces, mailboxes or use of the building amenities (pool, spa, gym, social room, etc.) without the homeowner being present.  [Guest rooms] do not count as individual units under the CC&Rs."

The condominium complex's governing documents do not impose a blanket prohibition on guest room occupants using building amenities, nor do they impose a requirement that such occupants be accompanied by a homeowner when using the facilities in question.  The trial court, however, believed such a rule could be inferred from the fact that guest room occupants should be deemed "guests" rather than "residents" under the Operating Rules.  Even if it were true that guest room occupants cannot qualify as residents under the Operating Rules,[19] the

---

[19]     We read the Operating Rules to say that every guest is necessarily a resident.  A guest is a "person other than a family member who is provided long-term residency in a Unit by the Homeowner or Tenant and who is registered as such with the

25

Operating Rules expressly allow guests access to certain amenities. For example, guests are permitted to use the gym, pool, and sauna.

Because there is no provision in the CC&Rs or Operating Rules that distinguishes guest room occupants from other visitors, guests, or residents, plaintiffs are likely to succeed on the merits of their claim for a declaration that guest room occupants may use building amenities without being accompanied by a homeowner. Because the trial court never undertook a balance of harms analysis as to this claim, we will reverse and remand with instructions to do so when deciding whether a preliminary injunction should issue as to amenity use.

## DISPOSITION

The order denying plaintiffs' motion for preliminary injunction is vacated and the cause is remanded for further proceedings consistent with this opinion. Specifically, the trial court is directed to issue a new and different order that maintains its ruling denying plaintiffs' request to enjoin the Association from enforcing the prohibition on guest room leases or rentals, maintains its ruling denying plaintiffs' request for an

_____

Office in writing," and a resident is a "person (e.g., family member of Guest) who is provided residency in a Unit by the Homeowner or Tenant . . . ." The trial court did not refer to the definition of "resident" in concluding that guest room occupants may not qualify as such, but emphasized that guest rooms "are not permitted to be leased or sold." The Association presents the same argument in its respondent's brief. Nothing in the governing documents, however, indicates a "resident" must occupy a unit as an owner or lessee.

injunction as to child residents, and that rules—after consideration of the balance of harms—on whether a preliminary injunction should issue to bar the Association from restricting guest room occupants' access to building amenities except in keeping with their status as visitors, guests, or residents under the Operating Rules.  The parties are to bear their own costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



RUBIN, P. J.



MOOR, J.

27